HARRY N. TWOMBLY,

*vs.*

CONSOLIDATED ELECTRIC LIGHT COMPANY.

Cumberland.  Opinion December 21, 1903.

*Master and Servant,* Safe Appliances. Repairs.  *Negligence,*
Defective Ladder, Fellow-Servant and Foreman.

1. It is the duty of the master to exercise reasonable care in providing suitable appliances for his servants to use, and in inspecting them afterwards, so as to ascertain their condition and, when necessary, to put them into a proper state of repair.  And while there are some duties respecting the repair of appliances which the master may so delegate to a servant as to escape responsibility for the negligence of the servant in performing them, there are others which the master may not thus delegate.

2. A forty-foot extension ladder used in the business of an electric light company, is held not to be a common tool or appliance within the meaning of the rules that there is no duty resting on a master to inspect, during their use, those common tools and appliances with which every one is conversant, and that if they wear out and become defective, the employer may rely upon the presumption that the servant using them will first detect the defect, and that the master is not to be held for negligence when the tool is a common one, of the fitness of which the servant is as competent to judge as the master.

3. Nor is the replacing of a dozy or rotten round in such a ladder to be held as such "ordinary repairs" as a workman is usually expected to make, in the absence of proof that the defective condition of the round was known to the servant.

4. While the master may delegate to a servant such ordinary repairs as arise incidently from the use of properly constructed appliances, and such as they must naturally require from time to time by reason of their use, and be relieved from responsibility therefor, *held;* that the replacing of a rotten round in the ladder in this case was not such an ordinary repair.

5. A master, using ladders in his business, cannot escape the consequences of the breaking of a rotten round in a ladder, by merely showing that he had a foreman, and that that foreman had the general oversight of all appliances with the general duty, among others, of seeing that repairs were

made, when necessary. The negligence of such a foreman, in the matter of inspecting or repairing such a ladder, is the negligence of the master, and not the negligence of a fellow-servant of the one injured by its breaking.

6. The court is unable to say that the verdict was clearly wrong either as to liability or amount of damages.

Motion by defendant.    Overruled.

Case for personal injuries sustained by the plaintiff Jany. 1, 1902, while in the defendant's employ at. work upon an extension ladder at a house on Congress Street, in the City of Portland.

From the testimony it appeared that the defendant corporation was engaged on the first day of January, 1902, and had been for a long time previous thereto, in generating and transmitting electricity for lighting houses and other buildings in Portland, and for various other purposes, and had lines of poles, or posts, erected upon and along the public streets and highways of Portland for the purpose of transmitting electricity thereon, and the plaintiff was a "lineman" in its employ, and had been from August, 1901, to the day of the accident.

For the purpose of attaching brackets and wires to buildings, at points high up from the ground, the defendant corporation used a forty-foot extension ladder, that is, the part of the ladder that stood upon the ground was twenty feet long and the extension part was also twenty feet long.

At about two o'clock in the afternoon of the day of the accident, the plaintiff, George Moody and John F. Foster, two other men then in the employ of the defendant, were sent to this house by Mr. Phillips, foreman of outside construction, to connect it with wires for the purpose of lighting, Moody being put in charge and control of the work and of the other men.

As it was necessary to put two corner brackets into the corner of the house at a point thirty feet from the ground, the extension ladder was placed on the sidewalk in front of the house and extended and the top end allowed to lean against the side of the house and near to its northwesterly corner.    Plaintiff was sent by Moody up this ladder to put in the corner brackets and attach the wires thereto. This he did,

Foster was sent up a pole standing in the street in front of the house and from which the wires were taken to insert into the house. The plaintiff put in the brackets; and the wires which were thrown to him by Foster from the pole by means of a handline, he fastened to the brackets; the handline, in the meantime, lying on the top of a railing, which was on the roof of a bay window in the second story of the house, the top of which railing was twenty-five feet and nine inches high.

When plaintiff had completed all the work up there that he was directed by Moody to do, he prepared to descend to the ground and took hold, with his right hand, of the top round in the ladder and placed his left foot over on to the roof of the bay window to enable him to reach for the handline, he got hold of the line in his left hand and made an effort to pull himself back in an upright position on the ladder by his right hand when the round that he had hold of suddenly broke at one side of the ladder and pulled out from the other side and thus threw him over backwards down on to the side-walk, one of his feet striking the glass in the upper bay window, breaking two lights.

On the way down he caught hold of the top part of the lower section of the ladder with his right hand, changing the position of his body so that his feet were lower than his head, and fell the rest of the distance of twenty feet, striking the sidewalk in a sitting position, but leaning backwards, receiving injuries to his back, right foot, and left arm and hand, from which he has ever since suffered and still suffers, and has not been able to do, and has not done, any labor to speak of since that time.

The jury returned a verdict of $3000 for the plaintiff.

*Wm. Lyons,* for plaintiff.

Counsel cited: *Buzzell* v. *Laconia Mfg. Co.,* 48 Maine, p. 116; *Dixon* v. *Rankin,* 14 Ct. of Sessions Cases, 420; *Shanny* v. *Androscoggin Mills,* 66 Maine, 425; *Gilman* v. *Eastern R. R. Co.,* 13 Allen, 440; *Hall* v. *Emerson-Stevens Co.,* 94 Maine, 450; *Donnelly* v. *Booth Bros. Granite Co.,* 90 Maine, 114.

Damages: *Hunter* v. *Stewart,* 47 Maine, 421; *Wyman* v. *Leavitt,* 71 Maine, 227, 229, 36 Am. Rep. 303; *Blackman* v. *Gardiner*

*Bridge,* 75 Maine, 216; *Murdock* v. *N. Y., etc., Express Company,* 167 Mass. 549; *Braithwaite* v. *Hall,* 168 Mass. 39; *Filer* v. *N. Y. Central R. R. Co.,* 49 N. Y. 42; *Matteson* v. *N. Y. C. R. Co.,* 35 N. Y. 491.

Motion: *Kimball* v. *Bath,* 38 Maine, 222; *Donnelly* v. *Booth Bros. Granite Co.,* supra; *Frye* v. *Gas Company,* 94 Maine, 26.

*Geo. E. Bird and Wm. H. Bradley,* for defendant.

Counsel cited: *Johnson* v. *Boston Tow-Boat Co.,* 135 Mass. 209; *Rogers* v. *Ludlow Mfg. Co.,* 144 Mass. 198, 203, 59 Am. Rep. 68; *Rice* v. *King Philip Mills,* 144 Mass. 229, 59 Am. Rep. 80; Am. & Eng. Enc. of Law, *Master and Servant; Wachsmuth* v. *Electric Crane Co.,* 118 Mich. 275; *Miller* v. *Railroad Co.,* 21 N. Y.; *Pellerin* v. *International Paper Co.,* 96 Maine, 388.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

SAVAGE, J.   Case by servant against master to recover damages for personal injuries.

The plaintiff was employed upon a ladder about twenty-five feet from the ground, and in reaching for a rope with one hand, nearly his whole weight was suspended from a round in the ladder which he held with the other hand. The round broke, and he fell to the ground sustaining injuries. No complaint is made that the plaintiff himself was not in the exercise of due care. But after a verdict for the plaintiff, the defendant now contends, upon a motion for a new trial, that the case shows no want of due care on its own part.

The ladder in question was a forty-foot extension ladder, and was extended at the time of the accident to the plaintiff. There was evidence that an examination of the round after the accident showed it to be dozy on the outside and rotten. The ladder had been in use somewhat more than three years. It seems that the defendant company had no regular rules governing the inspection of appliances. Such inspection and repairs consequent upon it were usually reserved for rainy weather, when the men could not work out of doors. The foreman of construction had general oversight over the appliances,

and was under the duty of keeping them in repair. A man was especially delegated to make general repairs, but it does not appear that it was his duty to make inspections. It is true that the testimony of the defendant tended to show that the rounds of the ladder were of white ash and sound, that an examination of the round after the accident showed it to be well seasoned and sound, that it broke off at both ends by the sides of the ladder, showing fresh breaks, and leaving slivers or "burrs" on the edges of the holes through which the ends of the round had passed; and the defendant's evidence tended further to show that the ladder had been inspected only a few days before it broke, and was found to be all right. And in respect to this testimony, we may add, that if it be reliable, it is utterly incomprehensible how the accident could have happened. The jury certainly were warranted in finding, as they undoubtedly did, that this testimony was not reliable, and that the round was not sound and reasonably safe. And we think it was fairly open to the jury to find that the defective condition of the round might have been discovered had it been suitably inspected. Not perhaps by such an inspection as would naturally be given to it by the workman upon it, whose duty it was to work, not to inspect, and who might lawfully rely upon the presumption that the master had performed its duty; but by such an inspection on the part of the master as reasonably would be necessary to make sure that an appliance upon which the servant was to risk his life or limb every time he used it, was reasonably safe.

The plaintiff testified that the round looked all right as he worked upon the ladder. But even that fact does not show that it was all right, or that the unsafe condition might not have been discovered by suitable inspection, such as was incumbent upon the master, unless in some way relieved from the duty.

But it is contended as a matter of law that the defendant is not liable upon the evidence. It is urged that there is no duty resting on the master to inspect, during their use, those common tools and appliances with which every one is conversant; that if they wear out and become defective, the employer may rely upon the presumption that those using them will first detect the defect; and that the

employer is not to be held for negligence when the tool is a common one, of the fitness of which the servant is as competent to judge as the master.   And the defendant cites authorities in support of these propositions.   But it seems to us that a forty-foot extension ladder is not a common tool or appliance within the meaning of these rules. A defect in a ladder arising from age or decay might not be discoverable by such inspection as a workman is expected to make, and might be upon more careful inspection.   To replace a dozy round of a ladder is not, we think, such "ordinary repairs" as a workman using it is usually expected to make, and certainly not unless the defect is brought to the knowledge of the servant.   Of course a master may furnish suitable materials for such renovations, and the circumstances in a given case may show that the workman is expected to make his own repairs.   And in such case the master is not responsible for the neglect of the workman.   But that is not this case.   This plaintiff was under no special duty to inspect or repair this ladder, except as rainy day work in common with his fellow laborers, when he might be directed specially to do so.

But the defendant further says that it provided proper persons to see that the ladder was kept in proper condition and to make ordinary repairs and renewals, and that such persons were fellow-servants of the plaintiff; and from this the defendant contends that if by the negligence of any of these persons the ladder was not suitably inspected and properly repaired it was the negligence of the plaintiff's fellow-servants, for which the defendant is not responsible.

While it is generally the duty of the master to use reasonable care in seeing that appliances furnished are reasonably safe, and by repairs are kept reasonably safe, doubtless there are some duties respecting the repair of appliances which the master may so delegate to a servant as to escape responsibility for the negligence of the servant in performing them; and doubtless there are some duties which the master may not thus delegate.   The line between these classes of duties must necessarily be shadowy, and any rule stating them must be indefinite.   *Rogers* v. *Ludlow Manufacturing Co.*, 144 Mass. 198, 59 Am. Rep. 68.   As was said in *Rice* v. *King Philip Mills*, 144 Mass. 229, 235, 59 Am. Rep. 80, "It is the duty of the master to

exercise due care in employing competent servants, in providing suitable machines, and in keeping them in proper repair, and the master cannot wholly escape responsibility by delegating these duties to a servant. If this could be done, a master might escape all responsibility by employing a competent superintendent to perform all these duties. But there are defects in machinery which are of such a character that the master has been held to perform his duty if he furnishes suitable materials, and employs competent servants, and instructs them to keep the machinery in repair, although the servants neglect to make the repairs, or make them in an improper manner. The master must exercise a reasonable supervision over the manner in which his business is done; but the repairs which machines properly constructed require to keep them in running order may be entrusted to competent servants. They are regarded as incidental to the use of the machines, because they are such as machines in substantially good repair must from time to time need." This case is cited and relied upon by the defendant here. But we think the distinction is obvious. If the test be as suggested in the last sentence quoted, it is that ordinarily, at least, the repairs which the master may delegate are those arising incidentally from the use of properly constructed appliances, such ordinary repairs as they must naturally require from time to time by reason of their use. To replace a rotten round of a ladder is not as we have said, such an ordinary repair. The rottenness, such as is complained of here, is not incidental to the use of a well constructed ladder.

Besides, we think the jury were warranted in finding that the master had not delegated his duties with respect to the inspection and repair of this ladder. It had a man to make repairs, so does every master using machinery. But this man had no duty of inspection. It had a foreman of construction of its lines, and this foreman had general oversight over all the appliances, as we have already stated, and the making of repairs when needed. So it is in the case of every corporate master, using appliances and employing men. To say that a master can escape the consequences of the breaking of a rotten round in a ladder, by merely showing that he had a foreman and that that foreman had the general oversight of all appliances, with the

general duty among others of. seeing that repairs were made, when necessary, would excuse practically all masters from responsibility in respect of keeping appliances in sound or safe condition. We do not think this is the law. The jury, therefore, upon the whole, were warranted in finding the defendant liable.

The defendant contends that the verdict for $3000 was too large, and that it should be set aside on that account. The plaintiff was a competent lineman earning sixty dollars a month at the time of his injury. There was testimony that between the time of the accident and the time of the trial he had been able to do but comparatively little work. His present condition and his probable future condition were also matters for the jury to take into consideration. The defendant says that the medical testimony shows that he had virtually recovered. The jury however were not confined to the medical testimony, and they evidently thought he had not recovered. We cannot say that the evidence did not justify them in their conclusion. And while the verdict seems large, it is not clearly shown to be so extravagant as to justify the interference of the court.

*Motion overruled.*