CRILLY, Respondent, v. FITZSIMMONS et al., Appellants

(48 N. W.2d 62)

(File No. 9184. Opinion filed May 22, 1951)

**Hanley, Leedom & Driscoll,** Rapid City, for Defendants and Appellant, O. J. Buxton.

**Whiting, Wilson & Lynn,** Rapid City, for Plaintiff and Respondent.

RUDOLPH, P. J.   The question presented in this case is whether the evidence establishes an agreement between the Hills Salvage Company, a partnership, and the defendant Buxton that the partnership should pay rent for certain ground owned by Buxton and used to store partnership property.   The trial court found against the existence of such an agreement and Buxton has appealed.   We affirm.

Certain facts are undisputed.   In August 1947, Roy W. Fitzsimmons leased from Buxton a certain sawmill and adjacent lots in Rapid City and conducted thereon a business known as Fitzsimmons Lumber Company.   Fitzsimmons agreed to pay a monthly rental for the premises of $250.   In March of 1948 Fitzsimmons and Emma Richards entered into a partnership agreement to conduct business under the name of Hills Salvage Company.   The principal business of this company was the purchase of used ties from an abandoned railroad, and the resale of these ties.   In this business it became necessary to store a large number of ties at various places.   Ties were stored on the premises Fitzsimmons had rented from Buxton.   Fitzsimmons was arrear in the payment of rent.   Buxton testified that he had received no rent since Fitzsimmons first took over the property in 1947. In August 1949 Buxton learned of people wanting ties and called Fitzsimmons.   As a result of this call 2500 ties were turned over to Buxton at 75¢ a piece, and $1875 was credited by Buxton to the overdue rent.   Buxton knew that the ties were the property of the Hills Salvage Company and not the property of the Fitzsimmons Lumber Company.

Appellant relies upon an alleged agreement between Fitzsimmons and Buxton who each testified in substance that in April 1948, shortly after the partnership commenced using the Buxton property for the storage of ties, Buxton went to the property and told Fitzsimmons he would like some payment on the rent.   Buxton testified that Fitzsimmons advised him that he had no money at that time, then

Buxton suggested "that as long as both places operated off of the property, storing ties and iron, and every thing else down there, that they split up the rent between the Fitzsimmons Lumber Company and the Black Hills Salvage Company, and due to the fact that the Salvage Company was — just came in there — I suggested that they pay a hundred dollars a month from the Salvage Company and a hundred and fifty from the lumber company which, Mr. Fitzsimmons said, sounded all right to him and it was a good arrangement." Apparently nothing further was done about the payment of rent until the sale of the ties to Buxton in August 1949.

Appellant contends that this testimony regarding the agreement by Fitzsimmons on behalf of the Salvage Company to pay $100 a month rent is undisputed and is conclusive as to the issue presented, it appearing that Fitzsimmons had authority as a partner to bind the partnership in making rental agreements.

■ The trial court found that "no agreement was ever entered into between the defendant Buxton and the defendant Fitzsimmons that the Hills Salvage Company would pay $100 per month of the rental to become due for the use of said premises, * * *". The court decided by its Conclusion of Law II, "that in delivering used railroad ties to Buxton, the defendant Fitzsimmons applied property belonging to the partnership of Hills Salvage Company to the payment of his personal obligation".

■■ It is true that no witness testified contrary to the testimony of Buxton and Fitzsimmons regarding the making of the agreement. Nor does the single fact that both Buxton and Fitzsimmons are interested in supporting the agreement make their testimony subject of disbelief by the court. The legal duty of the trial court to enter findings in an equity case consistent with the undisputed testimony of a witness is the same as the duty of the court to direct a verdict in a jury case, according to such testimony. State v. Nieuwenhuis, 55 S.D. 636, 227 N.W. 84. This duty was defined in the case of Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 594, 72 A.L.R. 7, as follows: "* * * the rule of

reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict, and the direction of such verdict should not be prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit."

Applying this rule announced in the Jerke case we have concluded that under this record the trial court's finding of no agreement cannot be said to be either whimsical or arbitrary. Notwithstanding that both witnesses testified in substance to the agreement, they were not in accord as to the details, for example, Fitzsimmons testified that it was not until August 1949, when the ties were delivered, that they settled on $100 a month for the partnership to pay. Buxton testified they agreed to $100 in April 1948. Fitzsimmons further testified that there was some question as to whether the rent to be paid by the partnership should be $100 of $125 a month and that "I deducted $25.00." Buxton said $100 was agreed to and made no mention of $125. It also appears from the transcript that Fitzsimmons was evasive, his testimony is in some instances confused and contradictory. Buxton also testified that Fitzsimmons at all times occupied the property under the original lease which was still in force, and that he applied the value of the ties to "this $250 a month rental under this lease agreement" with Fitzsimmons.

The reactions of the trial court to this testimony are set forth in a memorandum opinion as follows:

"6. Bearing in mind that the lease with Buxton was in force and that Fitzsimmons was in possession in March 1948 it would seem as though any new deal whereby the partnership was to become a tenant of Buxton should have

contained (A) A release of Fitzsimmons from the original deal (B) A new agreement between himself, personally, and Buxton (C) An agreement between the partnership and Buxton (D) A new account on his books (E) The application of any rent paid on the Hills Salvage Company account and a receipt to it.

"7.   In the consideration of the problem it must be remembered that in March of 1948 Fitzsimmons was indebted to Buxton for past rent and was to become liable for future rent and he at that time was dealing concerning an obligation which was his.   This of course Buxton knew.

"8.   The separate answer of Buxton sets up the original obligation and does not even allege that the original obligation was in any wise changed, but treats the original obligation as still existing.   It is not alleged that he had applied the ties on the partnership debt.   Obviously it cannot be claimed that Fitzsimmons owed $250.00 per month and the Hills Salvage Company an additional $100.00 per month.

"9.   There is nothing in the documentary evidence which supports Buxtons theory of an obligation owing from the partnership.   On the contrary the invoice was on a billhead of the Fitzsimmons Lumber Co. and the receipt contained thereon was signed not by the Hills Salvage Co., the owners of the ties, but by R. W. Fitzsimmons.   Nothing is said thereon about rent or for what months.   The record is completely silent as to how it was handled on Buxtons Books.   It is to be remembered the partnership agreement was made on March 16, 1948 and it was sometimes in March 1948 that the claimed agreement was made between Buxton and Fitzsimmons.   Any agreement made was not to be retroactive hence if we assume they claimed rent from March 16, 1948 as 100.00 per month, and the ties were invoiced Aug. 16, 1948 — $1700.00 was due and the amount paid was 1875.00, $175.00 more than the rent due or 75.00 more if payment was being made in advance.

"10.   As against the facts as outlined we have the testimony of Buxton and Fitzsimmons.   In the face of the facts as to what was done it seems that the most that can be

said for it was that they talked about it but never reached any agreement."

■ ■ The evidence clearly establishes that Emma Richards neither authorized the delivery of the ties to Buxton nor ratified the transaction, and this court, for the reasons set out above, having sustained the finding by the trial court of no agreement between Buxton and Fitzsimmons, it must be held under this record that Fitzsimmons used partnership assets to pay his individual debt to Buxton. This he may not do. 68 C.J.S., Partnership, § 158.

The judgment appealed from is affirmed.

All the Judges concur.