STONER, Appellant v. EGGERS, Respondent

(92 N.W.2d 528)

(File No. 9671. Opinion filed October 20, 1958)

**Arend E. Lakeman,** Mobridge, for Plaintiff-Appellant.

**A. Coe Frankhauser,** Gettysburg, for Defendant-Respondent.

HANSON, J. This personal injury action brought by an employee against his employer has been tried twice in circuit court. The first trial resulted in a verdict for plaintiff in the amount of $2,130. A new trial was granted. The court directed a verdict for defendant in the second trial. Plaintiff appeals contending the negligence of defendant was a question of fact for the jury and not one of law for the court.

Both parties are residents of Gettysburg. The defendant, Ernest Eggers, owns several rental properties in that city including a store building occupied by the "East Side

Market". This store building was originally 60 feet long and 22 feet wide. In 1955 defendant built an addition thereto and employed plaintiff, James Stoner, and Andy Linkys to perform the necessary construction work. While so employed on April 27, 1955 plaintiff was injured when the scaffolding upon which he was working collapsed. This action followed.

■■ In establishing a prima facie case the burden was on plaintiff to show actionable fault on the part of the defendant employer. Stevenson v. Douros, 58 S.D. 268, 235 N.W. 707. Three elements are necessary to constitute actionable negligence, "(1) The existence of a duty or obligation on the part of defendant to protect plaintiff from injury. (2) Failure of defendant to perform or discharge that duty. (3) Injury to plaintiff resulting from such failure of defendant." Daniels v. Moser, 76 S.D. 47, 71 N.W.2d 739, 741.

Plaintiff was fifty-six years of age. For many years he had been employed as a mechanic in the Potter County Highway Department. From June 1953 until the accident he worked on a building moving crew and as a carpenter. After the accident he was re-employed by the County Highway Department as shop foreman.

The defendant supervised all of the labor performed on the store building. Defendant also furnished all of the materials, equipment, and tools needed in its construction. Included were 3 x 12 inch bridge planks and sets of two-foot, four-foot, and seven-foot sawhorses. The sawhorses were made of 2 x 6 inch material and, according to plaintiff's own testimony, were safe and substantial. By placing the bridge planks on top of a set of sawhorses the workmen were provided with a simple, safe scaffolding. By changing the sawhorses the height of the scaffolding could easily be varied.

On the day of the accident plaintiff and Linkys were siding the south side of the building. Before the noon hour they were using four-foot sawhorses and bridge plank as a scaffold. A higher scaffold was needed to finish the siding after they returned to work in the afternoon. Instead

of using seven-foot sawhorses which were readily available and which would have provided a safe place to work, plaintiff and his fellow servant elected to make their scaffolding higher by nailing two-foot sawhorses on top of the four-foot ones they had been using. A nail was driven into one leg of each two-foot sawhorse to hold it in place—the other three legs were not secured. The scaffold was completed by placing the bridge plank across the top sawhorses.

Defendant did not direct the construction of the scaffold in this manner. The evidence is conflicting as to whether or not he was present at the time. According to plaintiff, however, he did observe the construction and inquired of Linkys "Do you think it will hold?" Linkys replied "Yah". Defendant then walked around to the other side of the building. After defendant left plaintiff and Linkys climbed up on the scaffold and started work. Shortly afterwards the scaffolding collapsed. Plaintiff fell across one of the four-foot sawhorses and sustained the injuries complained of.

■ It is the duty of a master to furnish his servants with a reasonably safe place to work and with reasonably safe tools, appliances and equipment with which to perform their work. 35 Am.Jur., Master and Servant, § 138, p. 569. "Where, however, the master has furnished a suitable place to work and suitable appliances, if the servant is mature and sensible and has had some experience in the work being done he must look after himself as to all obvious dangers in the details of the work. Further, the master cannot be held liable for failure to furnish a safe place to work if the danger is so obvious and is before the servant's eyes to such extent that he must know, by the use of ordinary intelligence, the danger that confronts him, nor can the master be held liable for failure to furnish the servant with safe tools where the servant has equal knowledge with the master as to the safety thereof, as where the tools furnished are of a simple nature in which defects can be readily observed." 56 C.J.S. Master and Servant § 203, p. 908.

■ A sawhorse is a commonly used simple tool. Its

design is uncomplicated. Its condition can be seen at a glance. Maher v. Wagner, 62 S.D. 227, 252 N.W. 647. Plaintiff was a mature, experienced workman of ordinary intelligence. He was as well qualified as his employer to observe the probable danger involved in stacking one saw-horse on top of the other. Defendant was under no obligation to warn plaintiff against an obvious danger of his own creation. To place such a burden on the employer, in this case, would make him an insurer of the safety of his employees. As stated in the case of Blomberg v. Trupukka 210 Minn. 523, 299 N.W. 11, 13, "* * * the purpose of a warning is to supply a party with information which he is presumed not to have. There is no necessity to warn against the obvious. * * * it is universally held that the master owes no duty to warn or instruct his servants of dangers obvious to a person of ordinary intelligence and judgment."

In the case of Voet v. Lampert Lumber Co., 70 S.D. 142, 15 N.W.2d 579, the employee was injured as the result of defendant's failure to provide a safe place to work. In the present case plaintiff's injuries were the proximate result of his own failure to use the safe equipment provided by defendant. There being no evidence of negligence on the part of defendant, the trial court properly directed a verdict in his favor.

██ Both parties devoted a considerable portion of their briefs to the question of whether or not plaintiff's employment came within the purview of the South Dakota Workmen's Compensation Act. If the employment did not come within the scope of the Act, as the trial court held, the defenses of contributory negligence, negligence of fellow servant, and assumption of risk would be available to defendant. SDC 64.0109. Regardless of whether or not the employment was covered by the Workmen's Compensation Act the primary burden was on plaintiff to show actionable fault on the part of defendant. Having failed to sustain that burden the secondary matter of defenses available to defendant becomes immaterial.

Affirmed.

All the Judges concur.