SMITH, Respondent

v.

COMMUNITY CO-OPERATIVE ASSOCIATION OF MURDO,
et al., Appellants

(209 N.W.2d 891)

(File No. 11107. Opinion filed August 14, 1973)

Costello, Porter, Hill, Banks & Nelson, Ronald W. Banks, Rapid City, for defendants and appellants.

Brost & Brost, Frank D. Brost, Presho, and Dana, Golden, Moore & Rasmussen, Richard W. Sabers, Sioux Falls, for plaintiff and respondent.

WINANS, Justice.

The plaintiff, Sam Smith, brought this action to recover damages for personal injuries that he sustained while assisting in extracting the wheel from a tractor tire at the defendant co-operative's place of business in Draper. The individual defendant, Ted Nies, was a general manager of the defendant co-op at the time of the incident. In his complaint, the plaintiff alleged that the proximate cause of his injuries was the defendants' negligence in, among other things, failing to warn him of the danger and failing to take reasonable precautionary measures. The jury returned a verdict of $21,000 in favor of the plaintiff and the defendants have appealed.

For the purposes of this appeal, the significant facts are as follows: On the date the accident occurred, Ted Nies and one of his employees were attempting to remove a large tractor tire from its inner assembly. The inner assembly consisted of the rim, wheel and wheel weight and it weighed between 700 and 1000 pounds. The process of removing the tire required that the inner assembly be dropped out of the tire by prying the beads of the tire over the rim, thus releasing the inner assembly to drop free of the tire to the ground. To accomplish this, it was necessary that the tire and inner assembly be placed in an upright position and balanced until the tire could be struck with a hammer to pry it off and over the outer lip of the rim. After encountering difficulty in handling the assembly, Nies requested assistance from plaintiff and two other patrons of the service station. All three, as requested, aided in holding the tire upright while Nies pounded on the tire with a hammer. There was evidence that Nies beat on the tire about three times before the rim, wheel and wheel weight fell immediately to the ground upon plaintiff's left hand, severing two of his fingers.

At the trial, the plaintiff testified that due to the position in which he was standing, he did not observe the wheel and wheel weight or realize that they were attached to the rim. Plaintiff admitted, however, that although he was not aware of the total amount of weight involved, he knew at the time that the rim alone was heavy enough to injure him if it fell on his hand.

In this appeal, it is the defendants' primary contention that the trial court erred in denying their motions for summary judgment and a directed verdict for the following reasons: (1) that the evidence established as a matter of law that plaintiff assumed the risk of his injury; (2) that the evidence established as a matter of law that the conduct of the plaintiff constituted negligence more than slight; and (3) that the evidence established as a matter of law that the injury to the plaintiff was due solely to the negligence or misconduct of a fellow servant. These three grounds will be considered in the order presented.*

---

* It is undisputed that plaintiff was a gratuitous employee and that these three defenses are available to the defendant in this case.

■ Before a party may be charged with assumption of the risk, it must be established that he had knowledge of the danger involved (actual or constructive); that he appreciated the risk therefrom; and that he voluntarily accepted said risk. Bartlett v. Gregg, 1958, 77 S.D. 406, 92 N.W.2d 654; Schmeling v. Jorgensen, 1957, 77 S.D. 8, 84 N.W.2d 558; 57 Am.Jur.2d., Negligence, § 281. Ordinarily, whether a plaintiff has assumed a risk is a question for the jury. It is only where the essential elements are conclusively established that the plaintiff may be charged with assumption of the risk as a matter of law.

■ In the present case, the trial court was justified in concluding that the plaintiff did not assume the risk as a matter of law. The plaintiff had little time to judge the situation in which he was involved. He was a rancher and inexperienced in the particular task. He testified that while assisting in the operation, he was unsure of where he was supposed to be or what he was supposed to be doing. Moreover, the plaintiff did not realize that the wheel and wheel weights—which weighed between 400 and 600 pounds—were attached to the assembly. He may have realized that the tire and rim alone could injure him if they fell on his hand, but such limited knowledge was not sufficient in itself to warrant removing the question of assumption of the risk from the jury. Based upon the above described facts, a jury could reasonably infer that the plaintiff did not have knowledge of the magnitude of the danger involved or an appreciation of the risk incident thereto.

■ It is also our conclusion that the plaintiff was not chargeable as a matter of law with contributory negligence more than slight. Based upon the facts of this case, a jury question was presented as to whether or not the plaintiff exercised the care for his own safety that "an ordinary prudent person" would have under the circumstances and whether his negligence, if any, was more than slight in comparison with the defendants'.

■ We also reject the defendants' argument that the plaintiff was precluded from recovery as a matter of law by the fellow-servant rule.

SDCL 60-2-2 is declaratory of the common law fellow-servant rule. It states in part:

"An employer, except as otherwise specially provided, is not bound to indemnify his employee for losses suffered by the latter * * * in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee."

The applicability of the fellow-servant rule in a case similar to the present was discussed in Solleim v. Norbeck & Nicholson Company, 1914, 34 S.D. 79, 147 N.W. 266. In that case, the plaintiff, an employee of the defendant, was injured by the negligent act of his foreman. The court held that the foreman was not acting as a fellow-servant within the meaning of the rule. In so holding, Judge McCoy, writing for the court, stated:

"The one who represents the master whether he be termed vice-principal or superior servant, may act in a dual capacity, (1) as vice-principal or superior servant; (2) as a fellow-servant; and whether or not the master will be held to be liable for the negligence act of such servant will depend upon whether the act, which is alleged to constitute the negligence was performed by such person in his capacity as vice-principal or in his capacity as fellow-servant. If the act was done in the performance of a duty resting upon the master, then the master would be liable for the negligent performance of such duty by the vice-principal; but if the act was done in the performance of a duty resting upon a fellow-servant then the master would not be liable."

Applying these principles to the present case, it is clear that the plaintiff was not precluded from recovery by the fellow-servant rule. One of the nondelegable duties of the master is to furnish his employees with a reasonably safe place to work. Stoner v. Eggers, 1958, 77 S.D. 395, 92 N.W.2d 528. This includes the duty of establishing proper methods of work and adequate supervision of the work in which his employees are

engaged. Restatement, Second, § 492 et seq.; 56 C.J.S. Master and Servant § 186. Here, the evidence was sufficient to establish that the proximate cause of the plaintiff's injuries was the negligence of Nies, as general manager of the defendant co-op, in the performance of these nondelegable duties of the master. As such, Nies was not acting as a fellow-servant within the meaning of the rule.

■ The defendants next contend that the trial court erred in denying their motion to strike from the evidence certain testimony by the plaintiff concerning expenses that he incurred as a result of his injury.

On direct examination, the plaintiff testified that as a result of his injury he was compelled to hire additional labor to work on his ranch and that between 1967 and 1970 he paid $1,250.00 for said additional labor. The plaintiff further testified on direct examination that he incurred expenses totaling $2,329 as a result of having to winter his cattle on another ranch shortly after his injury. In regard to these expenses, he also stated categorically that he would not have incurred any of them had it not been for his injury.

The defendants argue that the above described testimony should have been stricken for the reason that the plaintiff contradicted his testimony and admitted on cross-examination that these were not expenses attributable to his injury. After reviewing the record, it is our conclusion that the defendants' argument is untenable.

With respect to additional labor costs, the plaintiff merely stated on cross-examination that his labor costs were "pretty close to the same" in the years before and after the accident. With respect to the costs of wintering his cattle on another ranch, the plaintiff testified in part as follows on cross-examination:

"Q. Well, we are trying to find out, Sam, what it is you really lost by having them wintered for six ($6.00) dollars a head. Can you help us out to tell us what it would cost to feed them in hay, what it would have cost you to feed them had you kept them home?

A. About eighteen ($18.00) dollars a head, I would say.

      \*     \*     \*     \*     \*     \*

Q. \* \* \* if you fed cows the same, per cow, through the same months, it could conceivably cost you almost as much as it did cost you when you had them out, isn't that true, sir?

A. I could have fed up my hay and hired a man for four hundred ($400.00) dollars a month and it would have cost more than to put the cows out.

      \*     \*     \*     \*     \*     \*

Q. What I'm asking you, do you have any idea if it wouldn't have cost just as much to keep them home and feed them than it did to put them out for those several months?

A. I think it would have cost me less to keep them home but I don't know how much."

We do not find in all this a showing that plaintiff contradicted his testimony and admitted that he did not suffer to some extent the expenses in question as a result of the injury. The plaintiff's statement that his overall labor costs were "pretty much the same" in the years before and after his injury is far short of an admission that he incurred no additional labor expenses as a result of the injury. Likewise, after reviewing plaintiff's testimony in context, it cannot be concluded that he admitted on cross-examination that he could have wintered his cattle on his own ranch—despite his injuries—at less cost than he incurred in having them wintered elsewhere.

In any event, if the rigorous and somewhat confusing cross-examination did give rise to an inference that the particular expenses were not attributable to his injury, such a contradiction affected only the weight of his testimony, not its admissibility.

See 88 C.J.S. Trial § 135; Walter v. Echanis, 1939, 163 Or. 148, 95 P.2d 979; Jett v. Jett, 1966, D.C.App., 221 A.2d 925. As such, the credibility of plaintiff's testimony was for the jury to resolve.

The defendants' remaining contentions relate to instructions given by the court and the court's refusal to give certain requested instructions. We find no merit in these contentions. When considered as a whole, the instructions given fairly informed the jury as to the applicable principles of law.

Affirmed.

All the Justices concur.