Richard M. JACKSON, Plaintiff
and Appellant,

v.

Merlyn J. VAN BUSKIRK,
Defendant and Appellee.

No. 15763.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1987.

Decided May 25, 1988.

Rehearing Denied June 29, 1988.

Ronald J. Wheeler of Wheeler Law Office, Huron, for plaintiff and appellant.

Daniel R. Fritz of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellee.

WUEST, Chief Justice.

Richard M. Jackson appeals from an order granting a directed verdict to Merlyn J. Van Buskirk in this negligence action. We affirm.

Jackson is 60 years old and was a salesman in the construction industry for many years. But in August of 1983, Jackson went to work for Van Buskirk, his son-in-law, as a farm laborer. One of Jackson's duties was to assemble and install an overhead garage door in one of the farm buildings. Two other employees, Bob Westall and Dewey Minske, also helped with the work. At some point during the installation of the door, Westall brought his own 24 foot aluminum extension ladder to the job site. Westall took the ladder apart so that each half could be used separately. The bottom half had rubber safety pads on the end to prevent slipping, while the top half had red plastic caps on both ends. Jackson and the other men used both halves of the ladder on numerous occasions without any problems. Van Buskirk observed the use of the top half of the ladder, but did not warn the men of any possible danger.

On January 17, 1984, Jackson went to work on the door by himself. He saw the top half of Westall's ladder in the corner of the building, so he set the ladder up as he had in the past and climbed to the top. The ladder slipped on the floor and Jackson fell, injuring his nose, arm, and ribs.

Jackson filed suit against Van Buskirk alleging that Van Buskirk negligently failed to provide safe working conditions and suitable equipment. Van Buskirk affirmatively alleged the defenses of contributory negligence and assumption of the risk. The case was tried to a jury, and at the close of Jackson's case the trial court granted a directed verdict to Van Buskirk on the basis of Jackson's contributory negligence.

On appeal, Jackson argues that the directed verdict was improper since negligence and contributory negligence are normally jury questions. He maintains that his experience as a salesman rather than a farmer tends to reduce or eliminate his negligence as compared to the negligence of Van Buskirk. We disagree.

Upon a motion for a directed verdict, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the non-moving party, and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's rulings on such motions are presumed correct and this court will not seek reasons to reverse. *Sabag v. Continental South Dakota*, 374 N.W.2d 349 (S.D.1985); *Cox v. Brookings Intern. Life Ins. Co.*, 331 N.W.2d 299 (S.D.1983).

We have often recognized that it is the duty of a master to furnish his servants with a reasonably safe place to work and with reasonably safe tools and equipment with which to perform the work. *See, e.g., Smith v. Smith*, 278 N.W.2d 155 (S.D.1979); *Bunkers v. Mousel*, 83 S.D. 45, 154 N.W.2d 208 (1967); *Stoner v. Eggers*, 77 S.D. 395, 92 N.W.2d 528 (1958). However, where the master has furnished a suitable place to work and suitable tools, if the servant is mature and sensible and has had some experience in the work being done, he must look after himself as to all obvious dangers in the details of the work. Furthermore, the master cannot be held liable for failure to furnish a safe place to work if the danger is so obvious and is before the servant's eyes to such extent that he must know, by the use of ordinary intelligence, the danger that confronts him. *Smith, supra; Bunkers, supra; Platt v. Meier*, 83 S.D. 10, 153 N.W.2d 404 (1967); *Stoner, supra*. As stated in *Stoner*, "the master owes no duty to warn or instruct his servants of dangers obvious to a person of ordinary intelligence and judgment." 77 S.D. at 399, 92 N.W.2d at 530 (quoting

*Blomberg v. Trupukka,* 210 Minn. 523, 299 N.W. 11 (1941)).

■ Here, the danger in using the ladder was obvious to Jackson. He knew the extension ladder had been taken apart; he knew he was using the top half of the ladder; and he knew the top half of the ladder did not have rubber safety pads for use on the floor. Jackson did not have to be a farmer to recognize this danger. The record indicates that there were other ladders and scaffolding which could have been used by Jackson, but he never complained or asked for a more suitable ladder. Under such circumstances, Van Buskirk had no duty to warn Jackson of the danger. *Stoner, supra.* Consequently, there is no evidence of negligence on the part of Van Buskirk, and the trial court properly directed a verdict in his favor.

Affirmed.

MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

HENDERSON, J., dissents.

SABERS, Justice (concurring specially).

I agree with the majority opinion except for its reliance on the statement that "The record indicates that there were other ladders and scaffolding which could have been used by Jackson[.]" The majority opinion fails to note that evidence that other ladders and scaffolding were available to Jackson was disputed by Jackson. For the purposes of a motion for directed verdict the trial court cannot use disputed testimony. The trial court can only use undisputed testimony and must consider that evidence in the light most favorable to the non-moving party. *Crilly v. Fitzsimmons,* 73 S.D. 646, 48 N.W.2d 62 (1951); *Hansen v. Isaak,* 70 S.D. 529, 19 N.W.2d 521 (1945).

HENDERSON, Justice (dissenting).

*Mortenson v. Braley,* 349 N.W.2d 444 (S.D.1984), involved an aluminum ladder placed on a concrete driveway and the duty of a homeowner to a roomer who used the ladder, which slipped. The *Mortenson* majority opinion relied upon *Stenholtz v. Mo-*

*dica,* 264 N.W.2d 514 (S.D.1978). In dissenting there, I would have further unfurled the banner of *Stenholtz.* 349 N.W. 2d at 447. Under certain circumstances and conditions, a duty is owed to an invitee including an obligation to inspect. *See* three conditions set forth in dissent per numerous authorities cited therein, including Restatement (Second) of Torts § 343 (1965). 349 N.W.2d at 446.

A reader's attention is called to *Kryger v. Dokken,* 386 N.W.2d 481 (S.D.1986), wherein the facts reveal a man fell into an abandoned well. *Stenholtz* and *Mortenson* were both cited as supporting authority. Again, the reader's attention is called to my special concurrence, for *Mortenson* involved a ladder with a rubber anti-skid pad missing. It could have reasonably been inspected. However, a foot of dirt covered the abandoned well in *Kryger,* so I could comfortably join the majority decision as there was no obvious obligation to inspect through a foot of dirt all over the premise to determine if there was an abandoned well hidden somewhere. *See Kryger,* 386 N.W.2d at 484 (Henderson, J., specially concurring).

However, before us, we have a 24–foot aluminum extension ladder. No anti-skid mechanism. It was taken apart and used separately, all with the consent and knowledge of defendant. Was there a duty owed, in this case, to examine or inspect for a dangerous condition by the defendant who hired his 60–year-old father-in-law? I believe there was. The majority opinion places the entire responsibility on the man using the ladder and no responsibility on the owner of the ladder which was used. This is wrong. Under the settled law of this state, the property owner, the employer/master, owed this 60–year-old man a safe place to work and it strikes me that there is a question of fact as to whether or not it was so provided. *Smith v. Community Coop. Ass'n of Murdo,* 87 S.D. 440, 209 N.W.2d 891 (1973). Not only must there be a safe place to work, but there is also supposed to be reasonably safe tools with which to perform the servant's work. *Id.,* 87 S.D. at 444, 209 N.W.2d at 893.

Even under the common law, which was notoriously harsh toward injured employees, a master had specific duties for the protection of his servants:

1) To provide a safe place to work;
2) To provide safe appliances, tools, and equipment for the work;
3) To give warning of dangers of which the employee might reasonably be expected to remain in ignorance;
4) To promulgate and enforce rules for employee conduct which would make the work safe.

*See Prosser and Keeton on the Law of Torts,* § 80, at 569 (W.P. Keeton 5th ed. 1984). While the "unholy trinity" of contributory negligence, assumption of risk, and the fellow-servant rule was, at common law, an almost absolute barrier to an employee's recovery, Prosser, *supra,* the legislature's adoption of comparative negligence, reflected in SDCL 20-9-2, lifts much of a plaintiff/employee's burden.

I wish to set the facts out rather succinctly, and the trial judge's rationale on the facts so that I can make my most critical legal point which, confessedly, is a conclusion but based upon rationale and authorities above and below: A directed verdict for the defendant should not have been granted because there was a jury question as to whether or not this injured plaintiff was guilty of contributory negligence, more than slight, as compared to the negligence of the defendant. As I understand it, the trial court bottomed the directed verdict in favor of the defendant, and against the plaintiff, upon the basis that the plaintiff was contributorily negligent. Apparently, the trial judge took the position that the plaintiff/servant was contributorily negligent because he knew that the extension ladder had been taken apart and further knew that the top half of the extension ladder did not have rubber pads on the bottom, but rather had red plastic caps. In one of the first cases in which I participated, after being sworn in as a Justice almost ten years ago, in the case of *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979), a master/servant case, this Court held that the issues of negligence, proximate cause,

and contributory negligence were classic jury questions and it was not error for the Court in said case to submit them to the jury. Marry that holding with the holding in *Smith v. Community Coop.,* which, *inter alia,* held that "[o]ne of the nondelegable duties of the master is to furnish his employees with a reasonably safe place to work. This includes the duty of establishing proper methods of work and adequate supervision of the work in which his employees are engaged." *Smith v. Community Coop.,* 87 S.D. at 444-45, 209 N.W.2d at 893 (citation omitted). I do not believe that there is any doubt that, under this record, the trial judge determined the defendant was negligent in this matter. It is obvious that the defendant was negligent. We must weigh, then, the plaintiff's negligence against the defendant's negligence. *Runge v. Prairie States Ins.,* 393 N.W.2d 538 (S.D.1986).

When one begins to compare the negligence of these two parties, one must burrow into the facts some more. Burrowing, I find: One Bob Westall brought this extension ladder to the job site and used it, as I have earlier alluded to, at the direction and consent of the master (defendant). Westall took the ladder apart so that it could be used separately. Master was all for this. Both Westall and plaintiff/servant used this ladder on several occasions in installing the overhead door. Contradictory evidence was introduced as to the availability of other ladders, but it is totally uncontroverted that the only ladders used by the employees to work on the door were the two sections of the 24-foot extension ladder. Master/defendant gave no warnings at any time to his 60-year-old employee/servant/father-in-law. This injured man saw no previous injurious occurrences with the ladder. The ladder had been used, in his presence, so for him to use it, as not only he had in the past, but others, does not make him a fool. If he was a fool, and if the majority is essentially saying that the law cannot protect a fool, the question before the upper chamber is whether the so-called "fool" was really a "fool" under

the circumstances of the case? Ah, who decides that? The trial judge? Or—the jury? If it is comparative negligence, such as we witness here, I cannot accept that it is the trial judge's decision to direct the verdict based upon the premise that this 60–year-old man/employee/servant was, as a matter of law, guilty of contributory negligence, more than slight, so as to deny him recovery without benefit of the twelve people in the jury box.

"Fool" (?)

Safe Tools    Jury Decides    Safe Place to Work

Master

---

Has the defendant breached the required standard of care, we ask? We answer that *ordinarily* this is a question of fact for the jury. *Nemec v. Deering*, 350 N.W.2d 53, 55–56 (S.D.1984). *See also Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). Nor can the defendant here rely on the "simple tool" doctrine, to evade liability, as a compound ladder is not a "simple tool." *Twombly v. Consolidated Elec. Light Co.*, 98 Me. 353, 57 A. 85 (1903). Under 56 C.J.S. *Master and Servant* § 235, at 991 (1948), we are instructed:

> A simple tool within the rule is one which has no complications in structure and is of such ordinary use that any normally intelligent person of mature age or of experience will have substantially as much knowledge as another and can use it in the ordinary and normal manner without incurring more than a bare possibility of injury.

Great emphasis do I make that the ladder was not used in the ordinary and normal manner. Because, we have witnessed via the printed page, the ladder was taken apart which triggered the fall and the injury. Is a ladder a simple tool? *See Smith v. Albert*, 110 Ohio App. 51, 168 N.E.2d 495 (1959) (whether ladder was "simple tool" was for jury to decide).

Assuming the ladder was a simple tool, the analysis should not stop there:

> Mere simplicity of the tool or appliance, however, will not relieve the master of all duty to inspect in every situation. The question whether he is relieved of that duty is dependent on the facts and circumstances of the particular case, and not on the tool or appliance alone. Nonliability in such cases rests on the assumption that the employee is in as good, if not better, position to observe the defect as the employer. The comparative knowledge of the master and servant is the test of the master's liability.... The application of the rule depends, among other things, on the nature of the employment; the locality where the work is to be performed; the use to which the tool is to be put by the employee; ... and on the employee's age and experience, his intelligence and skill, capacity to appreciate danger, and familiarity with the work to be done.

56 C.J.S. *Master and Servant* § 235, at 991–92. Where the facts indicate that plaintiff was not in a better position than the defendant to discover the defect, the underlying basis of the "simple tool" doctrine is contradicted. *Metz v. Haskell*, 91 Idaho 160, 417 P.2d 898 (1966).

Again, I say: This ladder was unsafe and was proven to be unsafe for it was not used in the manner for which it was begotten and it did precipitate an injury. There were no rubber safety pads on both ends. There is a tremendous difference between rubber safety pads and red plastic caps. Son-in-law should have forewarned his father-in-law, after examining the ladder, "Hey, Pop, be careful, it's dangerous, you could fall, there are no safety pads on one

end of the ladder," or words to that effect. Oblivious was defendant to father-in-law's peril. At least the jury should have decided whether the older gentleman was, in the final analysis, a fool or not. Did he assume the risk? Ordinarily, this is a jury question. *Berg v. Sukup Mfg. Co.*, 355 N.W.2d 833 (S.D.1984). Therefore, I respectfully dissent.