Charles A. LARKIN, II, and Charles A. Larkin, III, Trustees of the Larkin Potato Company, Inc., Charles A. Larkin, III, personally, Plaintiffs and Appellants,

v.

Joe ROE and Jim Arthur, d/b/a Cobb Creek Farms, Terry C. Frost and Cobb Creek Farming Corporation, Defendants and Appellees.

No. 16384.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1989.

Decided July 19, 1989.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellants.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for defendants and appellees.

YOUNG, Circuit Judge.

Plaintiffs appeal from a directed verdict entered in favor of defendant Terry C. Frost (Frost) dismissing him in his individual capacity from the action. We affirm.

## FACTS

Plaintiffs Charles A. Larkin, II, and Charles A. Larkin, III, are in the business

of raising potatoes. The junior Larkin is presently president of Larkin Potato Company, Inc. The partnership of Cobb Creek Farms was formed in 1985. The original partners were Joseph H. Roe (Roe) and James D. Arthur (Arthur). The business of the partnership was that of growing and marketing potatoes.

In the spring of 1987, Roe approached the Larkins and asked whether the Larkin Potato Company would raise potatoes for a contract Cobb Creek Farms had with Frito-Lay. As a result, three contracts for the purchase of specified quantities of potatoes were negotiated and signed. Two contracts were signed on May 6, 1987, and the third was signed on July 7, 1987.

During this same time, Cobb Creek Farms obtained an operating loan from the American State Bank in Pierre. One condition placed upon the receipt of this loan was that Cobb Creek Farms had to build a potato storage warehouse in Pierre. Funds for the construction of the warehouse were to come from the Small Business Administration (SBA), but the SBA loan did not go through. Since a warehouse was still a necessity, Roe began negotiations with Frost in June of 1987 concerning the building of the storage facility. The warehouse, however, was not completed on time. Without a place to store their products, Larkins were prevented from harvesting and delivering their potatoes according to the contracts. Ultimately, Cobb Creek Farms failed to pay the Larkins as per the contracts and this action resulted.

In an effort to alleviate the problem created by the failure of the SBA loan and the necessary construction of a warehouse, Arthur discussed with Roe the possibility of Arthur's leaving the partnership. On July 15, 1987, Cobb Creek Farming Corporation, a South Dakota corporation, purchased all of the assets of the Cobb Creek Farms partnership. On the same date, Arthur received a check from Cobb Creek Farming Corporation in the amount of $25,000 for his share in the partnership. Roe received 25,500 shares of stock in the new corporation in exchange for his interest in the partnership.

As part of the partnership sale, Frost, as a shareholder in Cobb Creek Farming Corporation, agreed to indemnify Arthur for the debts of the partnership owed to the SBA and/or the American State Bank. This indemnity agreement was signed by Frost as a shareholder in Cobb Creek Farming Corporation and Arthur as a partner in Cobb Creek Farms.

In the litigation that followed Cobb Creek Farms' failure to perform under the contracts, Frost was sued in his individual capacity. Plaintiffs alleged that Frost was a partner in Cobb Creek Farms and therefore personally liable on the contracts. At the close of plaintiffs' case, the trial court granted Cobb Creek Farms' motion to dismiss Frost in his individual capacity from the lawsuit.

## ISSUE

Did the trial court err in granting a directed verdict as to Frost's individual liability on the grounds that the plaintiffs failed to make a prima facie showing that Frost was a partner in Cobb Creek Farms?

## DECISION

■ Upon a motion for a directed verdict, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the non-moving party, and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's rulings on such motions are presumed correct and this court will not seek reasons to reverse. *Carlson v. First Nat. Bank,* 429 N.W.2d 463 (S.D.1988); *Jackson v. Van Buskirk,* 424 N.W.2d 148 (S.D. 1988).

After examining the record before us in the light most favorable to the non-moving party, we conclude that there is no evidence that Frost was a partner sufficient to allow reasonable minds to differ. All contracts entered into between the Cobb Creek Farms partnership and Larkins were signed before Frost became involved in the

operation. In addition, Arthur's share in the partnership was purchased by the newly-created corporation and paid for with corporate funds.

Testimony concerning Frost's status as a partner proves equally as tenuous. Plaintiffs made only three references to Frost in their case-in-chief. The first reference concerned Frost's involvement in the potato contracts prior to July 15, 1987. This testimony was given by Charles Larkin, II. Larkin testified that prior to signing the third contract on July 7, 1987, Roe informed him that Terry Frost was "with me." The second reference to Frost came during the testimony of Arthur. His testimony revealed that in June he and Frost and Roe verbally agreed that Arthur would be bought out of the partnership. However, the agreement was not finalized until the 15th of July. Arthur stated: "It took from that time in June until the 15th of July before we finally got everybody together at the same time and got—and made an agreement." The final reference to Frost occurred during the testimony of Charles Larkin, III. Larkin stated that after the signing of the contracts with Cobb Creek Farms he had a conversation with Frost at the bar in the Kings's Inn. At that time Frost indicated to Larkin that "he was connected." Larkin further testified that Frost did not make any personal guarantees to Larkin. Viewing this evidence in a light most favorable to the plaintiffs and giving the plaintiffs the benefit of all reasonable inferences, we hold that the trial court did not err in granting a directed verdict.

■ Counsel for both sides have addressed the issues of piercing the corporate veil and the alter ego theory of establishing Frost's liability as a shareholder in the corporation. However, these issues were not raised at the trial court level. As such, we will not consider them for the first time on appeal. *Sobolik v. Stone,* 420 N.W.2d 764 (S.D.1988); *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D.1984).

The judgment of the trial court is affirmed.

WUEST, C.J., and MORGAN, HENDERSON and SABERS, JJ., concur.

YOUNG, Circuit Judge, for MILLER, J., disqualified.