### Fred Lynn HASTINGS
#### v.
### DIS TRAN PRODUCTS, INC., and United States Fidelity & Guaranty Company, Liberty Mutual Insurance Company, Intervenor.

#### Civ. A. No. 17071.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Feb. 26, 1975.

---

Harold Lloyd, Houston, Tex., for plaintiff.

Stafford, Pitts & Bolen, Alexandria, La., for defendants.

Gold, Hall, Hammill & Little, Alexandria, La., for intervenor.

EDWIN F. HUNTER, Jr., Chief Judge.

Our function in this diversity case is to determine applicable Louisiana products liability law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Broadly, the questions include (1) whether Louisiana has adopted strict liability as defined by the Restatement of Torts, 402A and/or has devised its own concept of strict products liability under the civilian principles of fault; (2) whether plaintiff's own acts, no matter how they are denominated, constitute a defense to a strict liability breach, and if so, in particular, what kind of negligence or conduct by a plaintiff comprises such a de-

fense; and (3) whether the conduct of plaintiff in this case presents a jury issue as to his alleged negligence and as to its proximately causing the accident.

In answer to special interrogatories, the jury, in essence, determined that Mr. Hastings' "40-foot" fall was caused by a defect in the fabrication and/or manufacture of the metal strap which made it unreasonably dangerous for normal use.[1] The jury also concluded that as a proximate result of the fall Mr. Hastings sustained damages in the amount of $150,000.[2] The jury was unable to reach a unanimous conclusion as to whether Mr. Hastings was guilty of negligence which was a proximate cause of his own fall. Should we enter judgment for the plaintiff in the amount of $150,000? Should we order a new trial? The answer hinges upon resolution of questions (2) and (3).

A brief review of the factual setting is appropriate. Fisk Electric Company, plaintiff's employer, contracted with CLECO to install a 138 kv 3–phase electrical transmission line from Simmesport, Louisiana to a substation near Marksville, Louisiana. This electrical transmission "power line," extending from an adjacent structure 241 feet away, had been connected to the substation by a metal strap, or a galvanized steel bar, measuring $\frac{1}{2}'' \times 2'' \times 10''$. After the power line had been positioned, it was discovered that the line did not meet electrical code requirements. Hastings was assigned to remedy this situation by adding one or more "bells," or "insulators," to the line. To accomplish the intended result, plaintiff hooked one end of a ladder to a rope which was attached to the substation itself. Then, by draping a rope attached to the other end of the ladder over the power line and securing it to a truck on the ground, he raised the ladder in a parallel position to the line. Plaintiff crawled out on the ladder to the spot where he intended to work. While attempting to hook the come-along (a winchlike device used to tighten the power line so that additional bells might be inserted), but before he safetied himself, the metal strap (bar) cracked, causing the power line and then the ladder to abruptly snap downward; this, in turn propelled Hastings some 40 feet downward. He sustained extremely severe injuries. The predicate of defendant's affirmative defense is that if plaintiff had safetied himself first—that is, hooked the safety belt to the ladder—no injury would have resulted other than the physical strain of swinging and dangling from the ladder until he could have been rescued. In support of this contention, defendant enlisted the expertise of an experienced electrician who testified that it was dangerous to conduct the type of work plaintiff was doing on a ladder, as plaintiff had done. Of more import was the expert's declaration that plaintiff, by not safetying himself while crawling out on the ladder, and then immediately upon reaching his work spot had violated one of the cardinal safety rules of the electricians' handbook, often referred to as their "Bible," and thus had knowingly subjected himself to great danger.

On the other hand, plaintiff invoked the testimony of an expert electrician who stated that working on a ladder in this particular situation was the accepted and customary method. He testified that he was fully aware of the "Bible" rule about "safetying off," but added that reasonableness and practicality play a major part in determining its applicability to a particular situation. In essence, plaintiff's expert declared that an electrician knows his trade is a risky one, and when working at heights simply does not have the time to safety himself every time he takes a step or moves his position. Instead, according

---

1. The defendant, DisTran, was the manufacturer of the metal strap which cracked, having manufactured it in 1968. The accident occurred in 1970.

2. The sufficiency of the evidence to sustain the jury's finding as to quantum cannot be disputed.

to this expert witness, an electrician normally safeties off only after preparing to begin his actual work. He concluded by stating that most electricians can hook up a come-along in a matter of seconds, and with only one hand, thus it was perfectly reasonable and customary for plaintiff to have attempted to hook up the come-along with the intention of then safetying off to the ladder before he began his actual work.

## THE LOUISIANA LAW OF PRODUCTS LIABILITY

The Louisiana Civil Code is replete with instances of liability based on breach of duty where there is neither negligence nor intentional misconduct by the party liable. Grigsby v. Coastal Marine, 412 F.2d 1011 at 1024–1029 (5th Cir. 1973); see Stone, Tort Doctrine in Louisiana, 27 Tul.L.Rev. 1, 1952. Louisiana courts have not expressly approved the language of Section 402A of the Restatement of Torts, but doctrinally, and consistent with civil law principles, the decisional authority is in perfect accord with the concept of strict liability as embodied in the Restatement.

The Louisiana law of products liability was firmly established by the Louisiana Supreme Court in Weber v. Fidelity and Casualty Company, 259 La. 599, 250 So.2d 754 (1971). Thorough and incisive discussions of the evolution of the Louisiana rule are found in Judge Richard J. Putnam's opinion in Soileau v. Nicklas Drilling Company, 302 F.Supp. 119 (1969) and Judge John Minor Wisdom's decision in Welch v. Outboard Marine Corporation, 481 F.2d 252 (5th Cir. 1973). See also Perez v. Ford Motor Company, 497 F.2d 82 (5th Cir. 1974). The plaintiff's burden in a Louisiana products liability action is to prove that (1) the manufacturer's product was defective; (2) the product was in normal use; (3) the product was unreasonably dangerous in that use; and (4) his injuries were proximately caused by the defect. The jury was instructed in detail in these particulars. Its unanimous affirmative answer to Interrogatory One resolved these issues in favor of plaintiff. The sufficiency of the evidence to sustain the jury's finding, in my opinion, is more than ample.

## THE PLAINTIFF'S CONDUCT

The jury was unable to agree on an answer to Special Interrogatory No. 2, which read:

Was Mr. Hastings guilty of negligence which was a proximate cause of his fall?

This interrogatory was submitted after considerable discussion between court and counsel. Plaintiff's counsel objected to its submission. The Court entertained serious reservations as to whether ordinary contributory negligence (the only type invoked) would bar recovery. Out of an abundance of caution we submitted the matter to the jury with the understanding that regardless of what answer was given, the Court might well be required under the jurisprudence to ignore the finding.

We must squarely face the problem which the Fifth Circuit, in *Welch* (supra), did not reach. There, the plaintiff urged that because Louisiana had adopted strict liability for product defects, the Court erred in charging the jury with respect to contributory negligence. Langlois v. Allied Chemical, 258 La. 1067, 249 So.2d 133 (1971). Because the *Welch* jury exculpated the defendant from liability, it did not reach the special interrogatory dealing with contributory negligence. Judge Wisdom noted the problem but held the issue irrelevant and moot under the circumstances.

Proceeding to adopt our legal conclusions to the particulars of the case before us, the jury found that the manufacturer's product was defective; that the product was in normal use; that the product was unreasonably dangerous; and that the plaintiff's fall and subsequent injuries were caused by the defect. There was no evidence whatsoever that Hastings knowingly and voluntarily proceeded to encounter a known danger —the cracking and collapse of a metal

strap being put to what the jury determined to be a normal use.

Defendant insists that Hastings' action in attempting to hook up the come-along before safetying himself constituted a jury issue as a defense to this products liability case. It is argued that in so doing he violated the "reasonable man standard." We conclude that this does not constitute a defense.

## COMMON LAW JURISDICTIONS

The flood of cases based on strict liability has caused the profession to focus attention on the appropriate role of the affirmative defense. Thirty-six jurisdictions have expressed their general approval of Section 402A of the Restatement.[3] In evaluating contributory negligence the starting point must be comment (n), which is an amalgam of assumption of risk and contributory negligence:

> "n. Contributory negligence. Since the liability with which this section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases [see § 524] applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in *voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense* under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds *unreasonably* to make use of the product and is injured by it, he is barred from recovery." (emphasis ours)

Throughout the nation we find superficial disagreement over the interpretation of comment (n). Is contributory negligence an available defense? A few decisions have flatly said that it is not. Others flatly say it is. If the cases are examined (e.g. 46 ALR 3rd 24) it is readily apparent that the conflict is more apparent than real. The appropriate inquiry is: What type of conduct on the part of a plaintiff will constitute a defense?

Decisional authorities reveal a consistent trend towards the propositions that (a) contributory negligence is not a defense when such negligence consists merely in a failure to discover the defect or to guard against the possibility of its existence and (b) when contributory negligence consists, in the broad sense, of failing to use ordinary care for one's own safety (the ordinary prudent person test).

Contrariwise, the jurisprudence and the wording of comment (n) speak uniformly to the conclusion that "contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger" is a solid defense. It is difficult to quarrel with the logic that the manufacturer's obligation to furnish a safe product has been waived by plaintiff's considered choice to chance the danger involved.

A plaintiff's recovery may be barred by evidence concerning the injured party's misuse of the product. Such misuse or improper use, rather than the condition of the product itself, may be found to be the proximate cause of an accident. These issues are often litigated in such a manner to make misuse an affirmative defense, as distinguished from proximate causation (which is an indispensible element in plaintiff's claim) practically inseparable. The case law reflects a certain amount of semantic confusion in this area. *This confusion may be* eliminated by requiring plaintiff to prove as an essential ingredient of his case *that the use he was making of the product at the time of the failure was in fact a normal use of the product and not a misuse of it.* For example, in this very case the jury was instructed that in

3. Professor Nobel, *Defective Products*, 25 Vand.L.Rev. 93n.4 (1972).

determining whether the use to which the metal strap was being put at the time of the accident was within the bounds of normalcy, they must determine from all the evidence whether the plaintiff, performing work on the wire, subjected the strap to its normal use which the manufacturer did or should have reasonably anticipated.

## LOUISIANA LAW AS TO PLAINTIFF'S CONDUCT IN STRICT LIABILITY CASES

The Louisiana law of products liability has rapidly developed within the last decade. However, plaintiff's conduct as a defense stands apart from the other doctrinal changes in that its Louisiana contours have not been examined by the United States Court of Appeals for the Fifth Circuit. But, we need not flounder without substantial guidance. The problem has surfaced in two decisions by the Louisiana Supreme Court. To these cases we direct our attention:

In *Langlois,* plaintiff fireman sued for personal injuries sustained from inhaling of gas that had escaped from defendant's plant, which was adjacent to the place where the plaintiff was sent on a rescue mission. Plaintiff did not use the mask on the fire truck during his exposure.[4] He and other members of his company were subjected to the gas escaping from defendant's premises. In rejecting the contention of defendants as to assumption of risk and contributory negligence, the Louisiana Supreme Court stated:

"The defense of contributory negligence which is urged here presupposes original negligence on the part of the defendant. This case is not a case where negligence is an ingredient of fault, and contributory negligence is not a defense. Usually, the assumption of risk doctrine will apply where the nature of the relationship of the parties appears to exact consent from the one injured to be exposed to possible harm. In such situations the plaintiff understands the risk involved and accepts the risk as well as the inherent possibility of damage because of the risk. There is some authority for rejecting assumption of risk in cases which do not involve negligence, but the majority view is that assumption of risk is a defense to strict liability. A plaintiff who with full knowledge and appreciation of the danger voluntarily exposes himself to the risks and embraces the danger cannot recover damages for injury which may occur." Langlois v. Allied Chemical Corporation, 249 So.2d 133 at p. 140.

The Court continued at 249 So.2d, page 141:

"The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965); Symposium: Assumption of Risk, 22 La.L.Rev. 1–166."

In *Langlois* the Supreme Court of Louisiana has clearly, and with deliberation, reached precise agreement with the concept of contributory negligence as embodied in footnote (n) of 402A of the Restatement. There may be slight theoretical differences, but the result is the same, and any disagreements involve labels rather than substance. Langlois surely suggests that contributory negligence, as determined objectively under the reasonable man standard, is not a defense. It settles, too, the proposition that when plaintiff, with full knowledge of the danger, voluntarily exposes himself to the risks, he cannot recover for injury which may occur.

We turn to *Weber*:

"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, *who without fault on his part*, sustains an injury

---

4. In the instant case he did not use the safety belt. The reasoning is equally persuasive.

caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect." (Italics ours). 250 So.2d 754, at 755.

The language "who without fault on his own part" is continually cited in Weber's progeny. What type of Fault? We examine the rather unique facts. Plaintiff's cattle were allegedly killed by an application of improperly formulated cattle dip manufactured by defendant. Neither the cattle nor the dip were available as evidence. The most logical line of defense would have been the presentation of evidence that the dip contained only the proper proportion of arsenic. The interment of the evidence put that defense beyond the reach of the defendant. The chief factual issue was whether the excessive amount of arsenic resulted from a defective batch of defendant's dip or was, instead, the result of misuse (an improper mixture) by the boys. The Court accepted as truthful the testimony of the plaintiffs that they had used only a small portion of the dip, well within safe limits, in preparing the spray solution. On the basis of this evidence the Court concluded that normal use was being made of the product and for that reason plaintiffs were without fault.

The important observation to be made is that the Louisiana Supreme Court clearly considered the claims of misuse made by the defendant, i. e., that the plaintiff's boys improperly mixed the batch of spray as evidence to show the lack of a defect in the product and not as constituting contributory negligence which would bar recovery. Perez v. Ford Motor Company, 497 F.2d 82 (5th Cir. 1974) affords the identical approach.

We instructed the jury as to what constituted normal use as follows:

"In relation to interrogatory number one: Was the fall proximately caused by a defect which made it unreasonably dangerous for normal use? What is normal use? Normal use refers to the use of a product by the injured party, not to a type of accident. You must decide whether the use to which the metal strap was being put at the time of the accident was within the bounds of normalcy. In other words, was the strap being used for purposes which an ordinarily reasonable manufacturer could reasonably expect it to be used? Could the manufacturer reasonably expect, in the course of any work done on this wire, that the strap would be called upon to support the additional weight? If the strap was being used in a manner which the manufacturer reasonably intended it to be used, or should have reasonably anticipated it would be used, then that would be a normal use. In essence, you must determine from all the evidence whether the plaintiff performing work on the wire, as was done in this case, subjected the strap to its normal use which the manufacturer did or should have reasonably anticipated."

No Louisiana court appears to have specifically held that contributory negligence (the prudent man test) is not a defense to a products liability case. The direction, tone and attitude of the Louisiana cases persuade me that the Louisiana Supreme Court will continue its development of the doctrines of strict liability in conformance with the Restatement. Guided by this belief and precedents cited, these are the conclusions we reach as to the Louisiana law:

■ 1. The plaintiff's burden in a products liability action is to prove:

(A) the manufacturer's product was defective; (B) the product at the time of its failure was being subjected to its normal use; (C) the product was unreasonably dangerous in that use; and (D) the injuries were proximately caused by the defect.

■ 2. Contributory negligence is not a defense when such negligence consists merely in a failure to discover the defect or to guard against the possibility of its existence.

■ 3. Contributory negligence, in a broad sense—that is, of failing to use ordinary care for one's own safety (the ordinary prudent man test)—is not a defense.

■ 4. The form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, which commonly passes under the name of assumption of risk, is a defense, i. e., if the user discovers the defect and nevertheless proceeds unreasonably to make use of the product and is injured thereby, he is barred from recovery.[5]

## CONCLUSION

■ There is no probative evidence of contributory negligence on the part of Hastings which would constitute a bar to his recovery. Especially is this so in view of the jury's finding on Interrogatory No. 1 under instructions as to what constituted normal use. There is encompassed within Interrogatory No. 1 all elements needed for liability to attach to the defendant. We disregard as immaterial the failure of the jury to reach a decision on Interrogatory No. 2.

Accordingly, the Court must enter judgment for the plaintiff against Dis Tran and its insurer in the amount of $150,000, costs and interest, all in accordance with Louisiana law.

5. See Rule 12 of the Louisiana Supreme Court which permits the Circuit Court of Appeals for the Fifth Circuit to certify to it propositions of Louisiana law where there are no controlling state precedents. The

Fifth Circuit recently certified to the Supreme Court of Florida the almost identical issues. West v. Caterpillar, 504 F.2d 967, 5 Cir. 1974.