TERESA ANN KINKA, Plaintiff-Appellant, *v.* HARLEY-DAVIDSON MOTOR COMPANY, INC., Defendant-Appellee.

First District (1st Division) No. 61114

Opinion filed March 1, 1976.

B. John Mix, Jr., and Stanley Pagorek, both of Chicago, for appellant.

Menk, Bishop & Kezelis, of Chicago (John Cadwalader Menk and John T. Mehigan, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Teresa Ann Kinka (plaintiff) brought an action for personal injuries

against Harley-Davidson Motor Company, Inc. (defendant). Plaintiff was a passenger upon a motorcycle manufactured by defendant. Her complaint was based upon strict tort liability and alleged a design defect in that defendant had provided an insufficient covering over the drive chain between the motor and the rear wheel. The jury returned a verdict of not guilty and answered affirmatively a special interrogatory as to whether plaintiff rode on and used the motorcycle in such a manner that she assumed the risk of injury.

Plaintiff appeals, contending only that the jury was erroneously instructed regarding the defense of assumption of risk.

On the evening of August 27, 1970, plaintiff, then 18 years old, accepted an invitation from her friend, Richard Holzer, to ride on the rear portion of the driver's seat of his 1970 model Harley-Davidson motorcycle. Plaintiff had ridden with Holzer in this manner once before. As she mounted the motorcycle, Holzer handed her his jacket, indicating that she should hold it for him. Because there was no strap or handle for plaintiff to hold, she put her arms around Holzer's waist and held the jacket in her hands in front of him.

Holzer drove the vehicle out of the parking lot of Chicago's Rainbow Beach. One of his friends, driving a motorcycle without a passenger, preceded them. They drove along 79th Street to its intersection with Lake Shore Drive. There the other cyclist went on but Holzer stopped for a traffic light, prior to a right turn onto northbound Lake Shore Drive. Plaintiff removed her arms from around his waist and commenced to put on the jacket so that she would not have to hold it in her hands. She did not tell Holzer that she had let go of him, although he testified that he was aware that her arms were no longer around him. She then placed her right arm into the right sleeve of the jacket. She was attempting to put on the left sleeve when the traffic light changed and Holzer started and turned the corner. At that moment, a gust of wind blew the jacket away from plaintiff's left arm, and into the rear wheel of the motorcycle, on the right side. Plaintiff testified that she screamed because she did not know what was happening. After about one block, Holzer stopped and the motorcycle turned over on its left side, pinning him to the ground.

The motorcycle sprocket is a circular plate with circumferential teeth similar to a gear. It is fastened to the center of the rear wheel. Power is transmitted from the motor back to the sprocket and rear wheel by a chain which fits into the sprocket teeth. These teeth have rounded outer surfaces but are cut sharply on both sides. Plaintiff's arm and the jacket were caught and entangled in the chain and sprocket so that she was severely injured.

Both parties introduced expert testimony regarding the design of the guard on the motorcycle's chain.

Plaintiff called John Sheehan, a metallurgical engineer, who spends a portion of his time doing accident reconstruction work. His work as an engineer is concerned primarily with metallurgy as applied to types of materials used for various parts as distinguished from the configuration or design of parts and products. He testified that he was generally familiar with operation of a motorcycle. He had never owned or ridden on a motorcycle and had done no research regarding motorcycles in preparation for the trial. He had never done any design work on motorcycles. He had examined the motorcycle involved in the accident and had a copy of the manufacturer's manual on its operation. He was not aware that the chain of this particular motorcycle was designed so that it was continuously oiled until he heard defendant's expert witness testify to that effect.

In response to a hypothetical question, Sheehan testified that there was a greater likelihood that the chain guard on the 1960 model of defendant's motorcycle could have been more effective to prevent entanglement of clothing in the sprocket or chain than the guard on the 1970 model here involved. He qualified this opinion by saying that he could not state categorically that the older type chain guard as used in the 1960 model would have prevented the accident but only that it would have "minimized the possibility". On cross-examination, he conceded that in his pretrial deposition he had testified that he had then not yet formed an opinion as to how the accident occurred, but that he believed it more logical that the jacket had been caught in the spokes of the rear wheel. He had reached the conclusion stated in his testimony before the jury within "the last week or two" prior to trial.

Plaintiff also called Richard Huebner, defendant's production engineer in charge of motorcycles and examined him as an adverse witness. He is a qualified engineer employed by defendant since 1957. He has had experience in the design of motorcycle chain guards. In 1970, defendant did not have a special department in charge of product safety. The witness testified that the guard on the 1970 model had been installed at the factory.

He expressed the opinion that the function of the chain guard is primarily to protect the rider against being spattered with mud and oil; and, secondarily, to protect the rider from getting caught in the chain. If the chain and sprocket were not covered or were improperly covered, it would be a hazard to a passenger. He compared the chain guards of the 1960 and 1970 models and concluded that, although the later model is smaller and more streamlined, both models function

equally well so that they present no difference in adequacy as regards safety. He testified that the motorcycle's chain is a roller chain and has no sharp edges on which clothing could get caught. On re-cross-examination, he added that it is conceivable that something could snag on the motorcycle's chain. In his opinion it would be unsafe for a person to attempt to put on a jacket while the motorcycle was in motion. He also testified that nothing could get caught in the upper portion of the chain and sprocket because the top portion of the chain is moving forward from the sprocket toward the motor and front wheel. That is, the chain at the lower or bottom area is moving into the sprocket but at the top the chain is moving out of or away from the sprocket.

We note here that the difference in the appearance of the guard above the sprocket on both models of the motorcycle appears from two photographs received in evidence. In the 1960 model, the guard is larger and curved down at its rear portion so as to partially enclose most of the upper half of the sprocket. In the 1970 model here involved, the guard is smaller and extends horizontally straight over the top of the sprocket and slightly to its rear.

Defendant alleged in an amendment to its answer that plaintiff as a passenger assumed the risk of injury "by putting on a jacket while the motorcycle was in motion with moving parts in which the jacket could become entangled." Thus, it alleged, the product was being misused "by being used in a manner for which it was not intended by the manufacturer."

Plaintiff tendered this instruction (Plaintiff's No. 4) taken from Illinois Institute For Continuing Legal Education, Illinois Product Liability Practice §9.20 (1973):

> "The Plaintiff has the burden of proving each of the following propositions:
>
> First, that there existed in the motorcycle a condition that rendered it unreasonably dangerous in the way claimed by the Plaintiff as stated to you in these instructions;
>
> Second, that such condition existed at the time the motorcycle left the control of defendant;
>
> Third, that the Plaintiff was injured;
>
> Fourth, that such condition of the motorcycle was a proximate cause of Plaintiff's injury.
>
> In this case, Defendant has asserted the affirmative defense of assumption of the risk of injury from use of the motorcyle.
>
> As to the defense of assumption of the risk of injury by the Plaintiff from the use of the motorcycle, the Defendant has the burden of proving each of the following propositions:

First, that the Plaintiff knew of the existence of a condition which rendered the motorcycle unreasonably dangerous;

Second, the Plaintiff appreciated the danger involved in the use of the motorcycle;

Third, that such use of the motorcycle after knowledge of such condition and appreciation of the danger was voluntary and unreasonable;

Fourth, that such assumption of risk proximately caused the Plaintiff's injury.

In determining whether the defense of assumption of the risk of injury from use of the motorcycle has been proved, you should take into consideration the Plaintiff's age, experience, knowledge, and understanding; and the obviousness of such condition and the danger involved.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved and that all of the propositions of Defendant's affirmative defense required of the defendant has not been proved, then your verdict should be for the Plaintiff. If, on the other hand, you find from your consideration of all the evidence that any one of the propositions the Plaintiff is required to prove has not been proved, or that all of the propositions of the defendant's affirmative defense have been proved, then your verdict should be for the defendant."

Defendant tendered this instruction (Defendant's No. 10, IPI-Civil No. 20.01 modified):

"The plaintiff has the burden of proving each of the following propositions:

First, that there existed in the motorcycle a condition that rendered it unreasonably dangerous in the way claimed by the plaintiff as stated to you in these instructions;

Second, that such condition existed at the time the motorcycle left the control of the defendant;

Third, that the plaintiff was injured;

Fourth, that such condition of the motorcycle was a proximate cause of plaintiff's injuries.

In this case defendant has asserted the affirmative defense that plaintiff assumed the risk of injury by attempting to put on a jacket while the motorcycle was in motion, with moving parts in which the jacket could become entangled.

The defendant has the burden of proving this defense.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved

and that defendant's affirmative defense has not been proved then your verdict should be for the plaintiff. If, on the other hand, you find from your consideration of all the evidence that any one of the propositions the plaintiff is required to prove has not been proved or that the defendant's affirmative defense has been proved, then your verdict should be for the defendant."

The court gave its own instruction as follows:

"The plaintiff has the burden of proving each of the following propositions:

First, that there existed in the motorcycle a condition that rendered it unreasonably dangerous in the way claimed by the plaintiff as stated to you in these instructions;

Second, that such condition existed at the time the motorcycle left the control of the defendant;

Third, that the plaintiff was injured;

Fourth, that such condition of the motorcycle was a proximate cause of plaintiff's injuries.

In this case defendant has asserted the affirmative defense that plaintiff assumed the risk of injury by attempting to put on a jacket while the motorcycle was in motion, with moving parts in which the jacket could become entangled.

In determining whether the defense of assumption of the risk of injury from use of the motorcycle has been proved, you should take into consideration the plaintiff's age, experience, knowledge, and understanding; and the obviousness of such condition and the danger involved.

The defendant has the burden of proving this defense.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved then your verdict should be for the plaintiff. If, on the other hand, you find from your consideration of all the evidence that any one of the propositions the plaintiff is required to prove has not been proved or that the defendant's affirmative defense has been proved, then your verdict should be for the defendant."

The following special interrogatory was given to the jury without objection and answered in the affirmative by the jury:

"Did the plaintiff, at the time of the occurrence in question, ride on and use the defendant's product-motorcycle in such a manner that she assumed the risk of injury?"

Comparison shows that the court's instruction parallels that tendered by the defendant except for the additional added paragraph commencing with "In determining  *  *  *."  Plaintiff's tendered instruction contains

additional material and thus differs from both of the others. The careful trial judge analyzed both tendered instructions and concluded that defendant's instruction did not adequately instruct the jury on the burden of proof on the affirmative defense of assumption of risk but, on the other hand, the instruction tendered by plaintiff placed an unreasonable burden upon defendant. The instruction given by the court is thus an attempted compromise between the conflicting views of the parties.

■■ In Illinois, assumption of risk is an affirmative defense in a strict liability tort action. (*Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418, 430, 261 N.E.2d 305.) Recovery will be barred if the defendant "by means of an affirmative defense, can show that the plaintiff knew the product was in a dangerous condition and proceeded to use the product in disregard of this known danger." (*Sweeney v. Max A. R. Matthews & Co.*, 46 Ill. 2d 64, 66, 264 N.E.2d 170. See also *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 360; 303 N.E.2d 382, and *Ralston v. Illinois Power Co.*, 13 Ill. App. 3d 95, 98, 299 N.E. 2d 497.) The test to be applied is subjective since the "knowledge, understanding and appreciation of the danger * * *" as regards the user must be considered rather than that of the mythical "reasonably prudent person". (See *Williams*, 45 Ill. 2d 418, 430, citing Restatement (Second) of Torts §496D, comment (c) (1965).) Thus, existence of plaintiff's knowledge of the defect which made the product unreasonably dangerous would seem an essential element of proof of the defense of assumed risk.

While plaintiff is entitled to have correct instructions submitted to the jury, "the trial court's refusal to give incorrect instructions was not error." (*Sweeney v. Max A. R. Matthews & Co.*, 46 Ill. 2d 64, 69.) If the plaintiff failed to meet her obligation to tender a proper instruction on the applicable law, she cannot complain that her instruction was refused. *Sweeney v. Max A. R. Matthews*, 94 Ill. App. 2d 6, 30, 236 N.E.2d 439.

In this area, plaintiff's instruction did not conform to the proof offered by plaintiff or to the allegations of defendant's answer concerning assumption of risk. Plaintiff's instruction described the first burden upon defendant as proving generally the knowledge "of the existence of a condition which rendered the motorcycle unreasonably dangerous." Defendant's answer and the instruction on the issues given without objection set out that plaintiff assumed the risk by putting on the jacket while the cycle was in motion with moving parts. Plaintiff's instruction was also deficient in that it defined assumption of the risk as requiring that plaintiff appreciate the danger involved in the use of the motorcycle which was in a dangerously defective condition but it did not define or describe the allegedly defective condition. The trial court correctly

stated that plaintiff's instruction placed an unreasonable burden of proof on defendant. Defendant's instruction failed to state specifically that plaintiff must have known of the defective design of the chain guard in order to have assumed the risk.

This problem results from a rather unusual dichotomy between plaintiff's complaint and defendant's answer. The complaint described the alleged design defect upon which plaintiff depended. The answer denied the allegations of the complaint and added an affirmative defense by amendment. The amendment alleged affirmatively that plaintiff assumed the risk by putting on the jacket while the motorcycle was in motion with moving parts in which the jacket could become entangled. The affirmative defense is thus not a true confession and avoidance by defendant, but it seeks to charge plaintiff with assumption of a risk other than that which allegedly resulted from the unreasonably dangerous defect in the product as alleged by plaintiff. No motion was made to strike this allegation of the answer and thus the parties joined in erroneously presenting the issue to the court. In strict tort liability cases, the assumption of risk stems from use of the product with knowledge of its allegedly defective condition. This comports with the definition of assumption of risk as set forth in *Sweeney* (46 Ill. 2d 64, 66) and *Williams* (45 Ill. 2d 418, 430, 431.) Any other definition would permit interjection "of simple contributory negligence, not a defense in a products liability action." *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 360.

Presented with this formidable dilemma, unrecognized by the parties, the able trial judge combined parts of both instructions to form a court's instruction which he gave to the jury. The jury was correctly instructed to consider plaintiff's age, experience, knowledge and understanding and the obviousness of such condition as well as the danger involved in determining whether the affirmative defense precluded her from recovering. (*Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418, 431.) However, for the reasons above stated, we cannot regard this given instruction as a satisfactory model for use in other cases.

Examination of the record here requires us to conclude that there was no error in this trial which prejudiced plaintiff's rights so as to require reversal. On the contrary, it is a most reasonable assumption in this case that no different verdict would be reached on another trial. (See *Kosowski v. McDonald Elevator Co.*, 33 Ill. App. 2d 386, 396, 397, 179 N.E.2d 469.) The testimony adduced by plaintiff in support of the allegations of her complaint was not impressive. Plaintiff's expert had minimal experience in working with motorcycles. In his pretrial deposition he testified that it was more likely that plaintiff was injured

because the jacket became caught in the spokes of the rear wheel. He reached the conclusion regarding the cause of the accident which he stated to the jury only a week or two prior to trial. In his deposition he testified that the motorcycle chain was relatively smooth and had no protuberance to catch a coat. When confronted with this testimony at trial, he stated that the deposition question had reference to such chains in general and not to the chain on this specific motorcycle.

These potent factors eroded, virtually to the point of eradication, the somewhat equivocal opinion of plaintiff's expert that there was a greater likelihood that the guard used in 1960 could have prevented entanglement of clothing than the one used in 1970. By way of contrast, defendant's expert was a man with years of practical experience who testified definitely and unequivocally that there was no difference in safety adequacy between the chain guards on the earlier and later motorcycles. Since this expert testimony went to the ultimate issue in the case, the jury as the trier of fact was not required to accept the opinion of either expert. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.*, 49 Ill. 2d 118, 122, 273 N.E.2d 809, and cases there cited.) The jury was more than amply warranted in accepting the opinion advanced by defendant's expert which strongly supports the result reached in the general verdict.

■■ Furthermore the disparity between the relative strength of the testimony of the two experts fully justified the general verdict because of lack of proof of proximate causation between the alleged design defect and the injury. The same observation applies to weakness of the proof on the issue of reasonable foreseeability to the manufacturer of the injury. See *Wenzell v. MTD Products, Inc.*, 32 Ill. App. 3d 279, 336 N.E.2d 125, *leave to appeal denied*, January 26, 1976, citing *Rios v. Niagara Machine & Tool Works*, 59 Ill. 2d 79, 319 N.E.2d 232, and *Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1.

This verdict of not guilty is most strongly supported by the evidence. The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BURKE and SIMON, JJ., concur.