John Duane SMITH, Plaintiff
and Appellant,

v.

A. Kenneth SMITH, Bernard Dodd, Inc., a
corporation and Aurora Industries, a
corporation, Defendants and Respondents.

No. 12276.

Supreme Court of South Dakota.

Argued Oct. 17, 1978.

Decided April 12, 1979.

E. Steeves Smith of Tinan, Padrnos, Smith & Saukerson, Mitchell, with Clyde E. Saukerson, Mitchell, on brief, for plaintiff and appellant.

Lyle J. Wirt of Davenport, Evans, Hurwitz & Smith, Sioux Falls, with Edwin E. Evans, Sioux Falls, on brief, Douglas R. Bleeker of Shandorf, Bleeker & Boldt, Mitchell, for defendant and respondent A. Kenneth Smith.

John L. Morgan of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant and respondent Bernard Dodd, Inc.

Ronald K. Miller of Miller, Miller & Sebastian, Kimball, for defendant and respondent Aurora Industries.

BRAITHWAITE, Circuit Judge.

This is a products liability case arising out of personal injuries suffered by John Duane Smith (employee) when the fingers and thumb of his left hand were amputated by the blade of a band saw which was manufactured by defendant Aurora Industries (Aurora), distributed by defendant Bernard Dodd, Inc. (Dodd) and owned by his employer, defendant A. Kenneth Smith (employer).[1]

## STATEMENT OF FACTS

Employee was hired by employer as a farm laborer. He was twenty-three years of age at the time of the accident and had lived and worked on farms all of his life. He was familiar with, and had operated, various kinds of equipment and machinery while working on his father's farm and for employer. The band saw involved in this case is shown in the photograph below. The saw blade (A) was made of steel and mounted on two wheels (B), which turned by a slow-speed motor and gears. On both sides of the cutting area (C), there were rollers which acted as guides for the blade. The blade itself and the guides are adjustable and require adjustment from time to time. The blade was changeable and the record indicates that the blade had been changed a few weeks prior to the accident. The saw also had a guard (D) over a portion of the blade.

---

1. The noncorporate parties are not related by blood or by marriage.

The correct method of operating this saw was to raise one of the wheels into an upright position by using the handle (E). The piece of iron to be cut was then inserted into a vise (F) and tightened. The wheel was lowered by using the handle until it touched the piece of iron to be cut. The operator of the saw turned it on manually by pushing the toggle switch (G) up to the "on" position. When the piece of metal was cut through, the metal arm attached to the wheel (H) would press the toggle switch into the "off" position so that the saw would shut off automatically. The operator would then lift the wheel, by using the handle, into the upright stationary position and remove the cut piece of iron from the vise.

Employee had received instructions on the use of the saw and had operated it on previous occasions either by himself or with employer and others. During the times he had used the saw before the accident, the saw always worked properly and it shut off automatically when the piece of metal was cut through. After the accident, the saw was tested, both in and out of the courtroom, to see if it would turn on without manually switching it. The saw worked properly except when the metal arm had been hammered out of adjustment.

On April 13, 1972, employee put a piece of angle iron in the vise, turned the machine on manually with the toggle switch, and left the machine shed for a few minutes. When he returned to the saw, the blade was not turning, the metal piece was cut through, and the motor was not running. When he raised the wheel of the saw by using the handle, the saw came back on. He could not explain why. When the saw started up, he testified that it startled him so that he took his hand off the handle and grabbed the unprotected portion of the wheel with his left hand. The hand was caught by the rotation of the blade, and his fingers and thumb were amputated.

## PROCEDURAL HISTORY

Employee sued Aurora and Dodd on the grounds of negligence, breach of warranties, and strict liability. Essentially, employee alleged defective design and manufacture by Aurora as follows: (1) the design of the saw was defective in having the "on" switch incorporated into the "off" switch; (2) the design was such that the "on" switch was fully exposed and capable of accidental activation; (3) the design of the automatic shut-off device was such that there was no positive shut-off; (4) the design did not include an emergency shut-off switch; (5) the on-off switch itself was defective in that it failed to properly and automatically, as designed, open the electrical circuit thereby positively deactivating the band saw; and (6) the saw blade was improperly guarded in that more of the blade was exposed than was safe or necessary. Employee alleged that Dodd placed the saw on the market in an unreasonably dangerous condition, knowing that it would be used without inspection.

Employee sued employer claiming breach of the duty to provide a reasonably safe place to work and reasonably safe equipment.

2. Restatement (Second) of Torts § 402A reads as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

The trial court submitted the case to the jury as to the employer upon the ground of negligence, and as to Aurora and Dodd upon strict liability. The jury found against employee and for all defendants. On appeal, employee alleges: (1) the trial court erred in instructing the jury that contributory negligence was a defense available to Aurora and Dodd under the doctrine of strict liability in tort; (2) the trial court erred in denying employee's motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial since there was no evidence of contributory negligence, misuse of the product, or assumption of the risk on the part of employee, and the defendants were liable for his injuries as a matter of law; and (3) the trial court erred in submitting separate jury verdict forms as to Aurora and Dodd because the liability of the manufacturer and the distributor is identical under the theory of strict liability.

## ISSUES

1. Whether contributory negligence is a defense to strict liability. We hold it is not.

2. Whether there was evidence to support a jury verdict in favor of the employer and against the employee. We hold there was.

3. Whether it was error to submit separate verdict forms as to the defendants Dodd and Aurora. We hold it was not.

## ISSUE # 1

█ Strict liability in South Dakota was not created by legislative fiat; it is the progeny of the judiciary. In *Engberg v. Ford Motor Company*, 87 S.D. 196, 205 N.W.2d 104 (1973), we adopted strict liability as expressed in Restatement of Torts (Second) § 402A.[2] Subsequently in *Shaffer*

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

*v. Honeywell, Inc.*, S.D., 249 N.W.2d 251, we affirmed the position taken in Engberg. In neither of those cases were we faced with the question of what defenses are available in a strict liability action.

Dodd and Aurora urge that § 402A is procedural only; that it lifts a plaintiff's burden of proving negligence in certain products liability cases but leaves unaltered the basic nature of the action; and that it simply creates a class of negligence actions where the plaintiff's burden of proving negligence is replaced by a burden of proving a defect which is unreasonably dangerous. They claim this was recognized in the underlined portion of the following quote from *Engberg*:

> Section 402A is designed to protect the public and insure that damages resulting from defective products are borne by those who market the product. However, the concept does not make the manufacturer an absolute insurer against any injuries caused by his product. *It merely relieves the plaintiff of the burden of proving negligence by the manufacturer.* To prevail, the plaintiff still must prove that the product was in a dangerous and defective condition when it left the manufacturer. (emphasis added) 87 S.D. at 205, 205 N.W.2d at 109.

Lifted out of context, the emphasized sentence does indicate that § 402A is procedural only. Clearly it has a procedural effect. In the context of the balance, however, we do not believe the court was saying the only effect of adopting § 402A is procedural; it

> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**3.** *Dippel v. Sciano* (1967) 37 Wis.2d 443, 115 N.W.2d 55; *Hoelter v. Mohawk Service, Inc.* (1976) 170 Conn. 495, 365 A.2d 1064; *Stokes v. Peyton's Inc.* (5th Cir. Ga.1976) 526 F.2d 372. Their rationale is that strict liability is akin to negligence per se; that § 402A is procedural only.

was merely emphasizing that the section did not make a seller an absolute insurer.

With rare exceptions the courts that have adopted the doctrine of strict liability (whether in the precise language of § 402A or not) have held that it is substantive. These courts hold that strict liability is not a negligence action with the elements of proof changed, but is a wholly different tort action. We believe that the court in *Engberg* was creating a wholly new tort cause of action, and we disapprove *Engberg* to the extent it may suggest that § 402A has only a procedural effect.

Were strict liability simply a type of negligence action, we would be compelled to hold that the classical negligence action defenses are available. Since that is not the case—and since this is a case of first impression in our state—we are free to determine what, if any, defenses should be allowed to this new tort action first judicially recognized in our state in 1973.

Many courts have considered the question of what defenses are available in strict liability cases. Classifying them is difficult because all of the courts do not mean the same thing when they use the terms contributory negligence and assumption of risk. A reading of the cases from other jurisdictions satisfies us that regardless of the nomenclature used they can be divided into four classifications:

(1) The classical negligence defenses are all available; [3]

(2) A restricted species of contributory negligence is a defense; [4]

**4.** *West v. Caterpillar Tractor Co., Inc.* (Fla. 1976) 336 So.2d 80; *Gilbertson v. Tryco Mfg. Co., Inc.* (8th Cir. Minn.1974) 492 F.2d 958; *Oltz v. Toyota Motor Sales, U.S.A., Inc.* (1975) 166 Mont. 217, 531 P.2d 1341; *Cyr v. B. Offen & Co.* (1st Cir. N.H.1974) 501 F.2d 1145; *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.* (9th Cir. Wash.1977) 565 F.2d 1129; *Mohr v. B.F. Goodrich Rubber Co.* (1977) 147 N.J.Super. 279, 371 A.2d 288. Though the standards set by these courts vary, they all fall somewhere between classical contributory negligence and assumption of risk.

(3) Most jurisdictions hold that contributory negligence—whether classical or restricted—is not a defense;[5] and

(4) Finally, California and Alaska hold that contributory negligence is not a defense, but plaintiff's recovery may be reduced on a theory of "comparative fault" which balances the user's negligence against the defectiveness of the product.[6]

We cannot determine whether justice requires or permits a defense of contributory negligence without looking at the purpose upon which strict liability is founded. All courts that have considered the question find that purpose to be as articulated in *Engberg*: "to protect the public and insure that damages resulting from defective products are borne by those who market the product." 87 S.D. at 205, 205 N.W.2d at 109. Strict liability is an abandonment of the fault concept in product liability cases. No longer are damages to be borne by one who is culpable; rather they are borne by one who markets the defective product.

The question of whether the manufacturer or seller is negligent is meaningless under such a concept; liability is imposed irrespective of his negligence or freedom from it. Even though the manufacturer or seller is able to prove beyond all doubt that the defect was not the result of his negligence, it would avail him nothing. We believe it is inconsistent to hold that the user's negligence is material when the seller's is not.

In our highly productive society there is an ever increasing number of persons injured by defective products. More frequently, the product is manufactured hundreds or thousands of miles away. The difficulties and expense of proof plus the plethora of injuries due to defective products have shown that the traditional concept of negligence and contributory negligence is no longer a viable manner of allocating responsibility for the increasing volume of damages resulting from defective products. We hold that the plaintiff's or the defendant's negligence is irrelevant and

**5.** *O. S. Stapley Co. v. Miller* (1968) 103 Ariz. 556, 447 P.2d 248; *Good v. A. B. Chance Co.* (Colo.App.1977) 565 P.2d 217; *Rindlisbaker v. Wilson* (1974) 95 Idaho 752, 519 P.2d 421; *Kinka v. Harley Davidson* (1976) 36 Ill.App.3d 752, 344 N.E.2d 655; *Hawkeye Security Ins. Co. v. Ford Motor Co.* (Iowa 1972) 199 N.W.2d 373; *Hastings v. Dis Tran Products, Inc.* (W.D.La. 1975) 389 F.Supp. 1352; *Baker v. Rosemurgy* (1966) 4 Mich.App. 195, 144 N.W.2d 660; *Keener v. Dayton Elec. Mfg. Co.* (Mo.1970) 445 S.W.2d 362; *Daleiden v. The Carborundum Co.* (8th Cir. Minn.1971) 438 F.2d 1017; *Jackson v. Coast Paint & Lacquer Co.* (9th Cir. Mont.1974) 499 F.2d 809); *Hawkins Const. Co. v. Matthews Co.* (1973) 190 Neb. 546, 209 N.W.2d 643; *Ferraro v. Ford Motor Co.* (1966) 433 Pa. 324, 223 A.2d 746; *Bendorf v. Volkswagenwerk Aktiengesellschaft* (1975) 88 N.M. 355, 540 P.2d 835; *Kirkland v. General Motors Corp.* (Okl. 1974) 521 P.2d 1353; *Henderson v. Ford Motor Co.* (Tex.1975) 519 S.W.2d 87. We place Restatement of Torts (Second) § 402A, Comment *n* in this category because it clearly indicates the kind of contributory negligence which is a defense is commonly called assumption of risk. Most of the courts in Category 2 which say that a restricted definition of contributory negligence is a defense used as a starting point the following language found in § 402A, Comment *n*:

On the other hand the form of contributory negligence which consists involuntarily and unreasonably proceeding to encounter a

known danger, *and commonly passes under the name of assumption of risk*, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery. (emphasis added)

We think the author's use of the word *unreasonably* does not bring the element of negligence in as a defense. It refers only to whether one facing a danger has a reasonable opportunity to elect whether or not to subject himself to it. If he does not have such reasonable opportunity to elect, then subjecting himself to the danger is not assumption of risk. This is what § 402A and the courts in this category mean by "unreasonably" using the product after discovering the defect.

**6.** *Butaud v. Suburban Marine & Sporting Goods* (Alaska 1976) 555 P.2d 42; *Daly v. General Motors* (Cal.1978) 20 Cal.3d 725, 144 Cal. Rptr. 380, 575 P.2d 1162. In 1972, California held in *Luque v. McLean*, 8 Cal.3d 136, 104 Cal.Rptr. 443, 501 P.2d 1163, that contributory negligence was not a defense because it would be inconsistent with the theory underlying strict liability. *Daly* affirms that holding but introduces the concept of "contributory fault" to ameliorate what it feels is the harshness of failing to allow a contributory negligence defense.

contributory negligence is not a defense in strict liability.[7]

In spite of the apparent certainty with which liability is affixed to a seller who markets a defective product, there are two circumstances where a user's conduct will bar recovery. These two are when the consumer assumes the risk or misuses the product. By assumption of risk we mean the conduct of one who is aware the product is defective, knows the defect makes the product unreasonably dangerous, has a reasonable opportunity to elect whether to expose himself to the danger, and nevertheless proceeds to make use of the product. By misuse we mean use of the product in a manner or purpose other than that for which it was manufactured. Recognition of assumption of risk and misuse of product as defenses does not undermine the philosophical basis of strict liability.

The trial court instructed the jury on contributory and comparative negligence but did not restrict application of those instructions to the claim against the employer. In fact, by use of the plural in those instructions the jury was instructed that the defenses of contributory and comparative negligence were available on the strict liability claims against Dodd and Aurora. This was error. We are unable to say upon what basis the jury found Aurora and Dodd not liable. There was evidence from which they could find the saw was defective; that it was unreasonably dangerous; that the defect was a proximate cause of the employee's injury; and that the employee was guilty of contributory negligence more than slight. Since these are possible explanations of the verdict in favor of Aurora and Dodd, we conclude that submission of the issue of contributory negligence on the strict liability claims was prejudicial error requiring reversal.

## ISSUE # 2

We turn to the issue of sufficiency of the evidence to support the jury verdict.

An employer has an affirmative duty to provide his employees with a reasonably safe place to work and reasonably safe tools. The employer is not an insurer of the safety of the tools or places of work but is liable only for negligence. He may not be liable for failure to fulfill that duty if the employee has equal knowledge with the master as to the safety of the tool or if the danger is so obvious that the employee must know by the use of ordinary intelligence the danger that confronts him. *Stoner v. Eggers*, 77 S.D. 395, 92 N.W.2d 528 (1958); *Ecklund v. Barrick*, 82 S.D. 280, 144 N.W.2d 605 (1966).

The trial court submitted the issues of negligence, proximate cause and contributory negligence to the jury. The jury returned a verdict against employee and in favor of employer. Detailing the evidence will serve no useful purpose. The record contains substantial credible evidence to support a verdict either for the employee or against him. The evidence would support a jury finding either way on the employer's negligence—either way on the issue of proximate cause—either way on the question of contributory negligence. These were classic jury questions. The trial court did not commit error in submitting those issues to the jury, or in refusing to overturn the verdict or in refusing to grant a new trial.

## ISSUE # 3

Employee's contention that the trial court erred in submitting separate verdict forms as to Aurora and Dodd is without merit. He cites no cases to support his position. He argues that (1) under § 402A, manufacturers and retailers are treated identically and (2) the evidence raises no factual issues to distinguish between the liabilities of each.

He is correct that § 402A and the courts considering strict liability have held that manufacturers and retailers are both sellers

---

7. We believe that adoption of the California "comparative fault" concept or the defense of contributory negligence would negate the underlying basis of strict liability and would present unworkable problems for the jury.

and as such are indistinguishable. But § 402A specifically applies to those *in the business of selling* the product in question; there was some dispute in the evidence as to whether Dodd was simply an occasional seller rather than engaged in the business.

But even assuming that if liability was indistinguishable, we can see no error in submitting separate verdict forms. Can employee be seriously contending that the jury may have found only one of the two liable and then, ignoring the court's instructions, found for both of them because there were separate verdict forms submitted by the court? We cannot conceive it. Employee's quarrel is not with the forms themselves but with the law the trial court instructed the jury to apply in determining which verdict forms to use.

### CONCLUSION

That portion of the judgment in favor of employer is affirmed, and that portion of the judgment in favor of Dodd and Aurora is reversed, and the matter is remanded for proceedings not inconsistent with this decision.

DUNN, J., concurs.

HENDERSON, J., concurs specially.

WOLLMAN, C. J., concurs in part and dissents in part.

FOSHEIM, J., deeming himself disqualified, did not participate.

BRAITHWAITE, Circuit Judge, sitting for MORGAN, J., disqualified.

HENDERSON, Justice (concurring specially).

This state, heretofore, has not addressed itself to the defenses available on a case brought under the strict liability theory.

I would hold that in the State of South Dakota under a given set of facts that:

    (a) assumption of the risk; or

    (b) misuse of the product

are available as defenses in strict liability cases.

I would further hold that in the State of South Dakota under a given set of facts that:

    (a) the classical negligence defenses are not available in the defense of a strict liability case. The judicially created tort of strict liability is not founded in negligence;

    (b) inasmuch as the strict liability theory is not based on negligence, that contributory negligence cannot be interposed as a defense;

    (c) although South Dakota has the comparative negligence doctrine, which is akin to the comparative fault theory now adopted by California and Alaska to reduce a plaintiff's recovery, this is not available as a defense in a strict liability action; and

    (d) "contributory fault" is just another way of saying "contributory negligence" and should not be available as a defense to a case founded on strict liability.

Policy considerations, which impelled the adoption of the strict liability doctrine, required the elimination of the contributory negligence defense when not arising to the level of assumption of the risk.

It appears to me that the courts in this nation are divided as regards what defenses are available in strict liability cases. Basically, it appears that this arises because of the fact that misuse of a product or assumption of the risk carries with it, implicitly, a foolish, reckless or negligent act of some kind or wrong doing on the part of a user of a product. Both assumption of the risk and misuse are terms of variable meaning.

There is definitely a trend in the United States to compare negligence on strict products liability actions. *Butaud v. Suburban Marine & Sporting Goods, Inc.*, Alaska, 555 P.2d 42 (1976); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *West v. Caterpillar Tractor Co.*, Florida, 336 So.2d 80 (1976); *Busch v. Busch Constr., Inc.*, Minn., 262 N.W.2d 377 (1977); *General Motors Corp. v. Hopkins*, Texas, 548 S.W.2d 344 (1977); *Powers*

v. *Hunt-Wesson Foods, Inc.*, 64 Wis.2d 532, 219 N.W.2d 393 (1974); *Schuh v. Fox River Tractor Co.*, 63 Wis.2d 728, 218 N.W.2d 279 (1974). However, this creates two great difficulties:

(1) how do you compare the negligence of one party with the strict liability of the other; and

(2) the plaintiff's misconduct: how may it be used as a basis for reducing the plaintiff's recovery under the principles of comparative negligence?

It strikes me that were we to adopt comparative negligence as a defense to strict liability cases that we would be placing a burden upon a jury that was highly arithmetic, if not algebraic, and justice for the parties would be lost in a world of technical wonderment. Furthermore, comparative negligence, if applied as a defense, literally eats away, consumes, and destroys the basic purpose of strict liability.

A manufacturer or distributor or retailer should not be at the mercy of a fool. So, lest it be considered that they are under a legal handicap by elimination of the classical negligence defenses, contributory negligence, comparative negligence or comparative fault defenses, these target defendants can plead and prove assumption of the risk or misuse of the product.

I would affirm the jury's verdict in favor of the employer and against the employee. There was sufficient evidence for the jury to determine whether or not there was a breach of a duty to provide a reasonably safe place to work and reasonably safe equipment. The jury found no breach of that duty.

However, I would reverse the trial court in having instructed the jury that contributory negligence was a defense available to Aurora and Dodd under the doctrine of strict liability in tort. In conclusion, the case should be remanded for proceedings below in spirit with the decision of this court.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I concur in the holding that there was sufficient evidence to support the verdict in favor of the employer and that the trial court did not err in submitting separate verdict forms with respect to Aurora and Dodd.

I do not agree, however, that contributory negligence can never be a defense in an action based upon strict liability. It may very well be that the traditional definition of contributory negligence might have to be modified in instructing a jury in a strict liability case, but more difficult judicial feats have been accomplished, e. g., creating the concept of strict liability itself. It is too facile an explanation to say that because the defendant manufacturer's negligence is not material, plaintiff's cannot be. The concepts of assumption of the risk and misuse of the product may not contain the dread word, but in practice they are not so distinguishable from the defense of contributory negligence that it is permissible to instruct on the former and not on the latter. Striking the reference to negligence from the *Engberg* case may make it possible to apply an algebraic process in determining which defenses are available, but it does not really explain why a plaintiff's misconduct, when described in terms of negligence, should be any less a bar to his recovery than when it is described as some other form of conduct or misconduct that has the effect of relieving the manufacturer of liability.

In summary, although I would hold that on the facts before us the instructions on contributory negligence were not warranted, I would not abandon that defense in a proper case.